Mr. Justice WAYNE
 

 delivered the opinion of the court.
 

 Several questions occurred upon the trial of this cause in the court below, upon which the opinions of the judges were opposed, and' they were certified to this .court for decision.
 

 From a careful examination of all.the acts of
 
 Congress
 
 relating to the. pay and emoluments of brevet officers, and those acts establishing and. organizing the marine corps, we are of the'opinion, whatever may have been a different practice, that the brevet officers of the marine corps have always been by law. upon the same footing with other officers of the military establishment of the United States,- ‘ in respect.toAe circumstances which entitle them to pay and emoluments, and that they continue to be so. Brevet pay and emoluments were originally given by the act of 1812, (2 Story’s Laws, 1278,) and by the act of 1814, (2 Story’s Laws, 1414,) when breveted officers commanded separate posts, districts, stations, or detachments. But an act was passed in 1818, (3 Story’s Laws, 1672,) regulating the pay- and emoluments of brevet officers, the 1st section of which is, that “the officers of the army who have brevet commissions, shall be entitled to and shall receive the pay and emoluments of their brevet rank, when on duty and having a command according to their brevet rank, and at no other time.” The 2d section is, “ that no brevet commission shall hereafter be conferred, but by and with the advice' of the Senate.” By the acts of 1812 and 1814, .they were conferred by the President alone. By the 1st section of the act of 1818, it will be perfceived that pay and emoluments were attached to command, and not, as they had. been, to the command of separate posts, stations,, districts, or detachments. That the act of 1818 repealed the 4th section of the act of 1812, no one doubts. But it is said, it is not á repeal of the 3d section of the act of 1814, because the act, in terms, speaks of the officers of the army who have brevet commissions, and not of such officers of the mariné corps. It may be well to state, that the 3d section of the act of 1814 js a transcript of the 4th section of the act of 1812, except that it has in it the words “ officers of. the marine corps,” instead of “officers of the army;” and that the
 
 *564
 
 words “stations or detachments” were substituted for “posts, districts, or detachments.” The first point for consideration is, was the act of 1818 a repeal of the 4th section of the act of 1812, and of the 3d section of the act of 1814, as to .the condition upon which brevet officers were to have additional pay and emoluments? It is conceded that it repealed, the 4th section in the act of 1812. We are of opinion that it repealed also the 3d section of the act of 1814. It cannot be denied that the marine corps is an addition to the “ military establishment of the United States.” It is declared to be so in the act by which it was organized. Now, though neither that fact, nor the wprds “ military establishment,” as they are used in the acts of Congress, will of themselves authorize the inclusion of officers of the marine'corps, within the words “officers of the army,” yet considering-the subject-matter of the act of 1818; the application of the 2d Section of the act to all breveted officers; and the assimilation of the • marine, corps, by the act of 1814, to the army, to give to its officers bre'vet commissions, and pay, exactly, too, in the same way as they . were given fo the officers of the' army, by the act of 1812; we do not see how, consistently with a correct judicial interpretation, the Conclusion can be resisted, that Congress did intend, in passing the act of 1818,' to place the officers of the marine, corps and the officers of .the army upon the same footing, in respect to brevet pay and emoluments. Though what has-been differently done is binding upon the government, and cannot be recalledj to. the pecuniary disadvantage of' any officer, who may have recéived brevet pay and emoluments, not according to the act of 1818, no erroneous practice under it, of however long standing, can justify the allowance of a claim, contested by the government, in a suit, contrary to what is the true meaning and intent of that act. The error of the accounting officers of the Treasury, and of, the officers of the marine .corps, in the construction of the act of 1818, arose from that act having been considered by itself, without any reference to other, statutes relating to brevet commissions and pay,’ and without any examination whether the words “ officers of the army,” as used in the lst'section of the. act
 
 of
 
 1818, though they are descriptive of a particular class, .were hot intended, from their connection with the subject-matter of the act, to comprehend all officers of the military-establishment of the United States, who, when the act was passed, were only under like circumstances entitled to brevet pay and emoluments.
 

 The correct rule of interpretation 'is, that if divers statutes relate to the same, thing, they ought' all to bó taken into consideration in construing any one of them, and it is an established rule, of law, that all acts
 
 in pan materia
 
 are to be taken together, as if they were' one law. Doug. 30; 2 Term Rep. 387, 586; 4 Maule & Selw. 210. If a thing contained in a subsequent statute, be within the reason •of a former statute, it shall be taken, to be within the meaning of. that statute; Lord Raym. 1028; and if it can be gathered from: a
 
 *565
 
 subsequent statute
 
 in pari materia,
 
 what meaning the legislature attached to-the words of a former statute, they will amount-to, a ^legislative declaration of its meaning, and will govern the construction of die first statute. Morris
 
 v.
 
 Mellin, 6 Barn. & Cress. 464; 7 Barn. & Cress. 99. Wherever, any words of a statute are doubtful or-obscure, the- intention óf the legislature is to. be resorted to, in order to find the-meaning of the words. Wimbish
 
 v
 
 Tailbois, Plowd. 57: "A-thing. -which is within the intention of the makers of -the ■ Statute, is as much, within the statute, as if it- were within the . letter. Zouch
 
 v.
 
 Stowell, Plowd. 366. These citations aré but - different illustrations of the rule, that the meaning of the legislature may be extended;beyond, the precise words used in the law, frofia the reason or motive upon which the legislature proceeded.; from the end in view, or the purpose which was designed — the limitation of the rule being, that to -extend the meaning to any cáse not included in the words, the case must be shown to come within thé same reason upon which the lawmaker proceeded, and not only, within a like - reason. This court has repeatedly, in effect, acted upon the rule, -and there may be found, in the reports of its'decisions, cases under it, like the cases which have, been cited from the reports of the English courts^ In 4 Dall. 14,“ The intention of the legislature, when discovered, must prevail, .any. rule.of construction declaredly previous acts to the contrary notwithstanding.” In’ 2 Cranch, 33,
 
 “
 
 A law is the best expositor of itself — that every part of an act is to be taken into, view for the purpose of discovering the mind of the legislature,”
 
 See'.
 
 &c. In the case of the United States
 
 v.
 
 Fisher et al., Assignees of Blight, in the same book, the court said, •“ it is undoubtedly a well-established principle in the exposition of statutes, that every part is to be considered, and the intention of the legislature to be extracted from the whole,” &c. In 2 Peters, 662,
 
 ‘
 
 A legislative act is to be interpreted according to the intention of the legislature,, apparent upon its face. Every technical rule, as to the construction or force of particular terms, must yield to the clear expression of the paramount will-of the legislature.” In Paine’s C. C. Rep. 11, “In doubtful -cases, a court should compare all the parts of a statute, and-different statutes
 
 in pari maferia, to
 
 ascertain the intention of-the legislature.” So in 1 Brockenb. C. C. Rep. 162. In the construction of statutes, one part must be construed by another. In order to test the legislative, intention, the whole statute must be inspected. ' No one of the cases cited will justify; nor have they been cited to sanction an equitable construction of-statutes beyond the just application of adjudicated cases. They have been brought together upon this’ occasion, for the-purpose of showing'KoW many-authorities there' are, to sustain, the conclusion, 'that the act of'1818, regulating the pay/and, emoluments of brevet officers, repealed the act of 1814, upon' which the defendant relies to support his claim to brevet pay.. Our answer to the first question
 
 *566
 
 then is, that a brevet field-officer of the marine corps is not entitled, by law, to brevet pay and rations, by reason of his commanding a separate post or station, if the force'under his command would not/ entitle a brevet field-officer of infantry, of a similar grade, to brevet pay and rations.' We will add to our exposition of the law upon this point, that brevet officers of the marine corps, in respect to pay and emoluments, were included under the Army Regulation 1124, sanctioned on the 1st March, 1825; were included also, in the regulation upon the subject of brevet pay, sanctioned by the President December 1, 1836, and that, they may claim brevet pay and emoluments under the regulations of 1841, when they exercise a command, according to the provisions regulating brevet pay, in page-344, Army Regulations of 1841. This right to brevet pay results from the marine corps having been subjected, by the' act of 1-798, (1 Story’s Laws, 542,) and by other acts of Congress, to the same rules and articles of war “ as aré prescribed for the military establishment of the United States,’? and from the exceptioii, in the 2d section of the act of 30th June, 1834, taking them out.of- the regulations whieh might be established for the navy, when detached for service with the army, by order of the President of the United States.
 

 To the second - question we reply, that the act of 1834, chv 132, does not repeal the first section of the act of 1818, regulating the pay and emoluments of brevet officers. That section of the act is still in force, and upon it rests the army regulations, in relation to brevet pay and emoluments.- The act of 1834 only repeals those sfectionsin the acts of 1812 and 1814, and in the act of 1818; by whieh the President wás authorized to confer, and the Senate was permitted to confirm, brevet commissions conferred upon officers of thé :army, or officers of the marine - corps, for ten years’ service in any one grade, excepting such officers as- had, before the passage .of the act, acquired the right to have brevet rank conferred by ten years’ service in any one grade, if the' President should think fit to nominate them to the senate for brevet commissions.
 

 To the third question we reply, that the 5th section of the act of the 30th June, 1834, is a repeal of the joint resolution of the two houses of Congress of the 26th May, 1832, respecting the pay and emoluments of the marine corps.
 

 The fourth question involves the charge made by the defendant for double rations. Additional rations are provided for by the 5th section of the' act of 1802, (2 Story’s Laws, 831.) “ To the commanding officer of each separate post, such additional number of rations as the President, of Ihe United States shall, from time to time, direct, having respect to thé special circumstances of each post,” is the language of a part of the section. It is the authority for the 1125th paragraph in the Army Regulations of 1825. The President sanctioned those regulations, and by doing so, delegated his author
 
 *567
 
 ity, as he had a right to do, to the secretary at war. The Army Regulations, when sanctioned by the President, have the force of law, because it is doné by him by the authority of law. The Regulations of 1825, then,-were as conclusive upon the accounting officer of the Treasury, whilst they continued in force, as those of 1836 afterwards were, and as those of 1841 now are. When, then, an .officer presents, with his account, an authentic document or certifi-. cate of his having commanded a post or arsenal, for which ah order has been issued from the War Department, in conformity with the provisions of the Army Regulations, allowing double rations, his right to them is established, nor can they be withheld, without doing him a wrong, for which the law gives him .a remedy.,. But as the question in this case must be decided upon the agreed statement of facts in the record, between Colonel Freeman and the District Attorney of the United States, we have no hesitation in answering it adversely from the claim of the defendant, for double rations, as the fact does not appear in the record, that he had such a command of a post or arsenal, at which double rations had been allowed; according to the Army Regulations, which were in force, from the time his account begins, or according to those subsequently sanctioned by the President. To the fifth question, we reply, that the feet of. appropriations having been made by Congress for double'rations, does not determine what officers in command are entitled to them. • The sixth question relates to the charge of .the defendant for compensation for his duties and responsibilities, with respect to clothing, arms, and accoutrements,” while he was a captain in the line of the marine corps, and in. command of the marines on the Boston station. The question, as it is put, makes it necessary for us to repeat whafhas been already said in a previous part of this opinion, that a brevet'field-officer of the marine corps, commanding a separate post, without a.command equal to bis brevet rank, is not entitled to. brevet pay and emoluments. But if such brevet officer is a captain in the line of his corps, and in the actual command of a company, whether he is in command of a post or not, he is entitled to the compensation given by the 2d section of the act of the 2d March, 1827,.(3 Story’s Laws, 2057.) We cannot give any other answer to this question, because the first part of it attaches brevet pay and emoluments to the command of a separate post, for which it is not allowed by law, and cannot therefore influence any right to compensation which may have accrued to a captain in the line under the 2d section of the act of the 2d March, 1827. That act is in full force, unrepeáled in any way by the act of 1834, for the better organization Of the marine corps. 4 Story, 2383. And captains and subalterns, of that corps are as much entitled to its provisions, as any other captains or subalterns in the military establishment of . tiie .United States. If there was any doubt of this, before the act of 1834 was passed, tbe 5th section of that act must be considered
 
 *568
 
 as having put an end to it. It is, “ that the officers of the marine corps shall.be entitled-to, and receive the same pay, emoluments, and allowances, as are now, or may hereafter be allowed to similar grades in the infantry of the army,’.’ subjefct to the exception' in the section .following the words just cited.
 

 We shall direct the foregoing answers to the questions, upon which the judges in the court below were opposed in opinion, to be certified to that court.