Davis, J.,
delivered the opinion of the court:
In the Army Regulations (edition of 1863) it is provided as follows:
“1304. When it is necessary to employ a private physician as medical officer, the commanding officer may do it by written contract, conditioned as in Form 18, at a stated compensation not to exceed $50 a month when the number of officers and men, with authorized servants and laundresses, is 100 or more; $40 when it is from 50 to 100, and $30 when it is under 50. (Page 333.)
“ 1305. But when ho is required to abandon his own business, and give his whole time to the public service, the contract may be not to exceed $80, and not to exceed $100, besides transportation in kind, to be furnished by the Quartermaster’s Department, when he is required to accompany troops on marches or transports. (Page 314.)
“Appendix B, 71. Paragraph 1305 Army Regulations is hereby so modified that private physicians, employed as medical officers with an army in the field in time of war, may be allowed a sum not to exceed' $1.25 per month, besides transportation in kind. (Page 518.)”
These regulations have been in practice disregarded for many years by the Surgeon- General. Contracts have been made with private physicians in which salaries have varied according to the hardship, danger, or value of the services to be performed. The Surgeon-General has for many years exercised the right to fix the pay of contract surgeons both generally and in particular cases, and his action has been uniformly acquiesced in by' the Secretary of War, and by the accounting officers of the Treasury.
Among the contracts in which this claim of right was exercised were three written contracts made with the claimant to perform the duties of a medical officer in Texas, in the first of which it was agreed that his pay should be $125 a month, and in the second and third, $100 a month. In the first contract it was further agreed that he should have the fuel and quarters of an assistant surgeon of the rank of first lieutenant; in the second and third, that he should receive such fuel and quarters if they could be furnished. Each of the three contracts was approved by the Surgeon-General. The combined term of service extended from September, 1871, to November, 1879.
The claimant was paid for such service at the rate of the *432 money compensation named in each contract for tbe period of service done under each; but no quarters were furnished to-him after December 15,1873, and he has received no commutation or allowance therefor. In this suit he demands $2,292.13,. as the commutation price of quarters during' the period that they were not furnished. The defendant denies the authority of its agents to contract to furnish quarters; and further sets up a counterclaim of $3,635, being- the aggregate of the sums paid to the claimant in excess of the amounts allowed by the regulations.
As to the claimant’s demand, it is clear that the agreement to furnish quarters was contrary to regulation. The restraining effect of a regulation upon subordinates of the Secretary of War was thus described by the Supreme Court many years since:
“The Secretary of War is the regular constitutional organ of the President for the administration of the military establishment of the nation; and rules and orders publicly promulged through him must be received as the acts of the executive, and, as such, be binding upon all within the sphere of his legal and constitutional authority. Such regulations cannot be questioned or defied because they may be thought unwise or mistaken. The right of so considering and treating the authority of the executive, vested as it is with the command of the military and naval forces, could not be intrusted to officers of any grade inferior to the Commander-in-Ohief; its consequences, if tolerated, would be a complete disorganization of both the Army and Navy. In the present instance the order was adopted by the proper authority, and by the same authority promulged to every officer through the regular official organ; and the question propounded to the circuit court was neither more nor less than this, whether a subordinate officer of the Army, insisting upon a prior regulation, which he thiuks either is or ought to be in force, shall obtain from the government emoluments which a subsequent order from his superior had warned him that it was not in his power to require. The question can need no argument for its solution.” (United States v. Eliason, 16 Pet.,. 302.)
It is contended that the custom which has obtained for the Surgeon-General to disregard the regulation in fixing the pay of contract-surgeons, and the uniform acquiescence of the Secretary of War in his doings, amount to a revocation of the regulation. It may be that the Secretary’s approval of a contract varying from a regulation supersedes the regulation as to that *433 contract. We will decide that question when it arises. We have no doubt, however, that, no matter how often repeated, it does not operate beyond the individual case, and does not repeal a general regulation.
It is also contended that although the express contracts may be annulled, yet that the claimant, having performed the services, is entitled to be paid what they are reasonably worth, and, on the authority of Clark's Oase (95 U. S. R., 539), that “their value may be fairly assumed at what wa,s stipulated for in the contracts.” The answer to this contention is that the same regulation which restrained the Surgeon-General from making these contracts denies to this court the power to imply them. If the government had paid the claimant nothing for his services, the court, while setting aside the special contracts, could have inferred a contract to pay the amount authorized by the regulation; but it has no j>ower to work by implication a contract which the Surgeon-General is in terms forbidden to make. As the claimant has already received for his services more than the regulation price, he is not entitled to judgment.
As to the counterclaim, the payments which are sought to be recovered back were all made in good faith, with no improper purpose on either side, with full knowledge of the facts, but under a mistaken construction of the law. It is quite clear that if the controversy were between private parties the money, under such circumstances, could not be recovered back. (Chitty on Contracts, 627,628.) The fact that the transactions took place with an agent of the government does not change the rule. (Warden’s Case, ante p. 86.) “With a few exceptions, growing out of considerations of public policy, the rules of law which apply to government and to individuals are the same.” (McKnight’s Case, 98 U. S. R., 186.) See also United States v. Freeman (3 How., 564) where the court say that payment erroneously made, in good faith, “is binding upon the government and cannot be recalled.”
The judgment of the court is that the claimant’s petition be dismissed, and that the defendants’ counterclaim be dismissed.