THURBER v. MILLER et al.

(Circuit Court of Appeals, Eighth Circuit. April 18, 1895.)

No. 523.

**1. REMOVAL OF CAUSES—SEPARABLE CONTROVERSY.**
In an action against several defendants, where the plaintiff's complaint states but a single cause of action, the interposition of separate defenses by the different defendants does not make a separable controversy with each, which can be removed to a federal court without the removal of the whole cause.

**2. SAME—FORECLOSURE OF MORTGAGE.**
In a suit in a state court for the foreclosure of a mortgage, to which the heirs and executors of the mortgagor and certain creditors, claiming liens on the mortgaged premises, were made parties, one of said creditors filed a petition for the removal of the cause to the federal court,

alleging that a mortgage held by him was superior to plaintiff's mortgage and that he desired to litigate such claim of priority. *Held*, that there was no separable controversy between plaintiff and such creditor.

**3. SAME—RESIDENCE OF DEFENDANT.**

The same restriction as to the residence of the defendant which is expressed in the second and fourth clauses of section 2 of the act of August 13, 1888, relative to the removal of causes to the federal courts, is implied also in the third clause; and a defendant cannot remove from a state to a federal court a separable controversy between the plaintiff and himself, unless he is a nonresident of the state where the suit is brought. Per Caldwell and Thayer, Circuit Judges.

Appeal from the Circuit Court of the United States for the District of South Dakota.

This suit was commenced in the circuit court of Lawrence county, S. D., by Horace K. Thurber, appellant, against Mary C. Miller, Arthur James Miller, and Thurber Chumasero Miller, as heirs at law of James K. P. Miller, deceased, and Joseph Swift, E. B. Beecher, and William H. Swift, executors of the estate of James K. P. Miller, deceased, Addison W. Hastie, trustee, Fred T. Evans, the city of Deadwood, and Lawrence county, S. D., to foreclose a mortgage made by James K. P. Miller, in his lifetime, to the plaintiff, on certain real estate in Deadwood, S. D. The bill averred that default had been made in payment of the mortgage debt, which it was alleged amounted to $61,900, and concluded with the usual prayer for a decree and sale of the mortgaged premises. Fred T. Evans, on his own motion, was made a party defendant to the suit. In his petition to be made a defendant he stated that the defendant Addison W. Hastie was a trustee in a mortgage executed by James K. P. Miller to him; that the mortgage was given to secure payment of a promissory note for the sum of $7,850 made by the mortgagor Miller to Evans; that "Evans is the sole beneficiary of said mortgage, and that the same was taken in the name of Addison W. Hastie, trustee for said Evans, and for no other person; that the plaintiff herein, Horace K. Thurber, alleges in his complaint that the said mortgage is subject to, and inferior in right to, plaintiff's mortgage, and has made the said Addison W. Hastie, trustee, a party defendant for the purpose of determining the priority between the said two mortgages; that the claim of the plaintiff in this action is made adversely to the rights of said Fred T. Evans, and he therefore desires to litigate the question directly with him." An order was entered on the 29th of August, 1891, making Evans a defendant. An amended bill was afterwards filed, which made Evans a defendant. In this state of the record, Evans, on the 2d day of October, 1891, filed his petition to have the cause removed to the circuit court of the United States, alleging as the sole ground for the removal: "That there is in said suit a controversy which is wholly between citizens of different states, and which can be fully determined as between them, to wit, a controversy between your said petitioner, who avers that he was at the time of the bringing of this suit, and still is, a citizen of the state of South Dakota, and the said plaintiff, Horace K. Thurber, who, as your petitioner avers, was then, and still is, a citizen of the state of New York. That the said controversy is of the following nature, namely: Said action is brought by plaintiff against said defendants for the foreclosure of a certain mortgage alleged to have been executed by said James K. P. Miller in his lifetime to said plaintiff" on the lands described in the bill, to secure the payment of certain debts therein set forth, and that the plaintiff alleges that his mortgage is senior and superior "to a certain mortgage made, executed, and delivered to A. W. Hastie, as trustee for this petitioner, by said James K. P. Miller, and covering and including the same real estate, to secure the payment of a certain promissory note made and delivered to said Miller by this petitioner, dated November 26, 1888, for the sum of $7,850, due two years after date. This defendant will insist and show to the court that the lien of his mortgage is prior and superior to that of the plaintiff." Upon the filing of this petition, the state court made an order for the removal of the cause into the circuit court of the United States, and upon filing a transcript of the record in

that court the cause progressed to a final decree of foreclosure, and also a final decree as to the disposition of certain rents and issues of the mortgaged property, from which last decree an appeal was taken to this court.

Norman T. Mason (Eben W. Martin, on the brief), for appellant.
G. C. Moody (Edwin Van Cise and Granville G. Bennett, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Upon opening the record in this cause, it is apparent that the circuit court never acquired jurisdiction thereof. The petition for the removal shows no ground for the removal of the cause from the state court to the United States circuit court. The defect of jurisdiction was not brought to the attention of the circuit court by a motion to remand the cause to the state court, or otherwise, nor has it been called to the attention of this court by counsel; but it is our duty, under the law, to examine the record, and, if it appears that the circuit court never acquired jurisdiction of the cause, to remand it to the state court. Barth v. Coler, 9 C. C. A. 81, 60 Fed. 466; Railway Co. v. Swan, 111 U. S. 379, 383, 4 Sup. Ct. 510; Burnham v. Bank, 10 U. S. App. 485, 3 C. C. A. 486, 53 Fed. 163; Railway Co. v. Twitchell, 8 C. C. A. 237, 59 Fed. 727; Mattingly v. Railroad Co., 15 Sup. Ct. 725; Koenigsberger v. Mining Co., 15 Sup. Ct. 751. This is an ordinary suit in equity to foreclose a mortgage on real estate. The bill makes the heirs and executors of the mortgagor and the creditors of the mortgagor having, or claiming to have, liens on the mortgaged premises, defendants; alleges the amount of the mortgage debt, that default has been made in the payment thereof; and prays for a decree for the amount of the debt, and for the sale of the mortgaged premises to satisfy the same. The creditors of the mortgagor having liens on the mortgaged premises are made defendants for the purpose of barring their equity of redemption, and as to them the allegation of the bill is as follows:

"Plaintiff further states, on information and belief, that the defendants Addison W. Hastie, Fred T. Evans, Lawrence county, and the city of Deadwood, have, or claim to have, some interest in or lien upon said mortgaged premises, or some part thereof, which interest or lien, if any, has accrued subsequently to the lien of said mortgage."

A bill for the foreclosure of a mortgage which asks for a decree for the amount of the mortgage debt, and the sale of the mortgaged premises to satisfy the same, and alleges that the lien of the complainant's mortgage is prior and superior to the liens of some of the defendants named in the bill, presents but a single cause of action. The ascertainment of the relative rank of the liens is incidental to the main purpose of the suit. "The cause of action is the subject-matter of the controversy, and that is for all the purposes of the suit, whatever the plaintiff declares it to be in his pleadings." Railroad Co. v. Ide, 114 U. S. 52, 56, 5 Sup. Ct. 735; Torrence v. Shedd, 144 U. S. 527, 530, 12 Sup. Ct. 726. The state-

ment of the rule in Dillon on Removals is fully supported by the authorities. The learned author says:

"If there be but one cause of action, involving many defendants, the fact that each makes a separate defense does not make separable controversies, nor does the default or disclaimer of one of the defendants give a right of removal to the other. * * * Thus, if the separate answers filed by the individual defendants in a suit for the foreclosure of a mortgage raised distinct issues in defending against the one cause of action, this will not create separate controversies, within the meaning of the act." Dill. Rem. Causes, §§ 40, 43.

It was open to the lien creditors of the mortgagor who were made defendants to the bill to set up such defenses to the plaintiff's claim of priority of lien as they might severally have. One might deny the validity of the plaintiff's mortgage, another might allege that it had been paid; and a third, as was done by the defendant Evans in this case, that it was junior to the lien of his mortgage. The effect of these different answers would be simply to put in issue the allegation of the bill that the complainant had a valid and paramount lien on the mortgaged premises. Defendants cannot divide or multiply a plaintiff's single cause of action. Separate defenses do not, therefore, constitute separate or different causes of action, or create separable controversies, but are merely separate defenses to the same cause of action, to the complete determination of which the mortgagor, or his proper representatives, are indispensable parties. Ayres v. Wiswall, 112 U. S. 187, 5 Sup. Ct. 90. In the case of Rosenthal v. Coates, 148 U. S. 142, 147, 13 Sup. Ct. 576, the supreme court, affirming decisions to the same effect, said:

"The suit was, in effect, one by the assignee to disincumber this fund in his possession of alleged liens, and the fact that each defendant had a separate defense to this claim did not create separable controversies."

The case made by the bill is one that cannot be finally determined, and the relief sought obtained, without the presence of the heirs and executors of the mortgagor; and it makes no difference whether they admit or deny the rights of the complainant,—their presence is nevertheless indispensable to the complete determination of the controversy. The issue raised by the answer of the defendant Evans is not, therefore, a controversy which can be fully determined between him and the plaintiff, and for this reason the cause was not removable. Wilson v. Oswego Tp., 151 U. S. 56, 66, 14 Sup. Ct. 259. The principle applicable to the case at bar is clearly stated by the supreme court in the case of Torrence v. Shedd, supra, as follows:

"Accordingly, in a suit by a judgment creditor to have the property of his debtor sold and applied to the payment of his debt, after satisfying prior incumbrances thereon, the holders of which are made defendants, it has more than once been decided that there is no such separate controversy between the plaintiff and the holder of such an incumbrance as will justify a removal, and this for the following reasons: There is but a single cause of action,—the equitable execution of a judgment against the property of the judgment debtor,—and this cause of action is not divisible. The judgment sought against the incumbrancer is incidental to the main purpose of the suit, and the fact that this incident relates to him alone does not separate this part of the controversy from the rest of the action. What the plaintiff wants is not partial relief, settling his rights in the property as

against this defendant alone, but a complete decree, which will give him a sale of the entire property, free of all incumbrances, and a division of the proceeds as the adjusted equities of each and all the parties shall require. The answer of this defendant shows the questions that will arise under this branch of the one controversy, but it does not create another controversy. The remedy which the plaintiff seeks requires the presence of all the defendants, and the settlement, not of one only, but of all the branches of the case."

In the case last cited, Mr. Justice Gray formulated a general rule which has been accepted in all subsequent cases as expressing the law on this subject. He said:

"But, in order to justify such removal on the ground of a separate controversy between citizens of different states, there must, by the very terms of the statute, be a controversy 'which can be fully determined as between them'; and, by the settled construction of this section, the whole subject-matter of the suit must be capable of being finally determined as between them, and complete relief afforded as to the separate cause of action, without the presence of others originally made parties to the suit."

See, to the same effect, Deposit Co. v. Huntington, 117 U. S. 280, 6 Sup. Ct. 733; Bellaire v. Railroad Co., 146 U. S. 117, 13 Sup. Ct. 16; Hanrick v. Hanrick, 153 U. S. 192, 14 Sup. Ct. 835; Barth v. Coler, 9 C. C. A. 81, 60 Fed. 466.

There is another fact disclosed by the record equally fatal to the jurisdiction of the circuit court. The plaintiff in the action is a citizen of New York, and the defendant Evans, on whose petition the suit was removed from the state to the circuit court, is a citizen of South Dakota,—the state in which the suit was brought. The removal of suits upon the ground that they involve separate controversies was first provided for by the act of July 27, 1866 (14 Stat. 306, c. 288). That act gave the right of removal to "the defendant who is a citizen of a state other than that in which the suit is brought." The provision of the act of 1866, that the defendant authorized to remove a suit upon the ground of a separable controversy must be a citizen of a state other than that in which the suit was pending, was in harmony with the rule that had always obtained with reference to the citizenship of a defendant in removing a cause from a state to a federal court. Under the judiciary act of 1789 (1 Stat. 73, c. 20, § 12), a defendant sued in a court of his own state by a citizen of another state could not remove the suit. It was only when the defendant was sued in the courts of a state of which he was not a citizen that he could remove the suit to the circuit court. Under the act of March 2, 1867 (14 Stat. 558, c. 196), which first gave the right of removal on the ground of prejudice or local influence, the right was confined to "such citizen of another state, whether he be plaintiff or defendant." The provisions of these acts restricting the right of removal to the party who is a citizen of a state other than that in which the suit is brought were re-enacted and carried into the Revised Statutes of 1873–74 (section 639, Rev. St. subsecs. 1–3). The first innovation upon this seemingly just and reasonable rule which had obtained from the organization of the federal courts occurred in the act of 1875. 18 Stat. c. 137. That act was designed to enlarge the jurisdiction of the circuit courts of the United States, whether original over suits brought

therein, or by removal from the state courts. It extended the jurisdiction of the federal courts to the very verge of the constitutional limit of the grant of judicial power. Among other provisions to carry out this object, it extended the right of removal to "either party or one or more of the plaintiffs or defendants," and did not restrict the right to the party or parties who were nonresidents of the state in which the suit was brought. But this act was, in turn, superseded and repealed by the act of March 3, 1887, as corrected by the act of August 13, 1888 (25 Stat. 434, c. 866). Section 2 of that act provides:

"Sec. 2. (1) That any suit of a civil nature, at law or in equity, arising under the constitution or laws of the United States, or treaties made, or which shall be made, under their authority, of which the circuit courts of the United States are given original jurisdiction by the preceding section, which may now be pending, or which may hereafter be brought, in any state court, may be removed by the defendant or defendants therein, to the circuit court of the United States for the proper district. (2) Any other suit of a civil nature, at law or in equity, of which the circuit courts of the United States are given jurisdiction by the preceding section, and which are now pending, or which may hereafter be brought, in any state court, may be removed into the circuit court of the United States for the proper district by the defendant or defendants therein, being non-residents of that state. (3) And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the circuit court of the United States for the proper district. (4) And where a suit is now pending, or may be hereafter brought, in any state court, in which there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state, any defendant, being such citizen of another state, may remove such suit into the circuit court of the United States for the proper district, at any time before the trial thereof, when it shall be made to appear to said circuit court that from prejudice or local influence he will not be able to obtain justice in such state court, or in any other state court to which the said defendant may, under the laws of the state, have the right, on account of such prejudice or local influence, to remove said cause."

This act restores the rule of the judiciary act of 1789 as relates to the party who may remove the suit, by restricting the right of removal to "the defendant or defendants." Under this act, a plaintiff who commences a suit in a state court cannot afterwards remove it. He is bound to remain in the forum of his own selection. It will be observed that the second clause of the section relating to the removal of suits between citizens of different states restricts the right of removal to "nonresidents of that state," i. e. the state in which the suit is brought; and a like restriction is contained in the fourth clause, relating to removals on the ground of prejudice or local influence. While this restriction is not found, in express terms, in the third clause, relating to the removal of suits in which there shall be a controversy which is wholly between citizens of different states, it is plainly implied, and what is implied in a statute is as much a part of it as what is expressed. U. S. v. Babbit, 1 Black, 61; Gelpcke v. Dubuque, 1 Wall. 221; Wilson Co. v. Third Nat. Bank, 103 U. S. 770.

The case of U. S. v. Babbit, supra, was in principle like the case at bar, and the court said:

"It is insisted by the counsel for the defendants in error that this is a necessary result, because the proviso at the end of the third section of this act, which imposes the limitation, is confined, in its operation, to the cases mentioned in the previous part of the same section. If this were so, the result claimed would not necessarily follow. In that case, we should find no difficulty in holding it to be clearly implied that the same rule of compensation should apply to their successors as to the then incumbents and their predecessors. What is implied in a statute, pleading, contract, or will is as much a part of it as what is expressed. Koning v. Bayard, 2 Paine, 251, Fed. Cas. No. 7,924; Haight v. Holley, 3 Wend. 258; Rogers v. Kneeland, 10 Wend. 218; Fox v. Phelps, 20 Wend. 447; Com. Dig. tit. 'Devise,' note 12. 'A thing within the intention of the makers of the statute is as much within the statute as if it were within the letter.' Stowel v. Zouch, 1 Plow. 366; U. S. v. Freeman, 3 How. 565."

The fifty-ninth section of the act of February 25, 1863, concerning national banks, provided that all suits by or against such associations might be brought in the courts of the United States or of the state. The fifty-seventh section of the act of 1864, relating to the same subject, revised and repealed the fifty-ninth section of the preceding act, and in the latter act the word "by," in respect to such suits, was dropped. Construing this latter act, the supreme court said:

"The omission was doubtless accidental. It is not to be supposed that congress intended to exclude the associations from suing in the courts where they can be sued. * * * Considering this section in connection with the succeeding section, the implication is clear that receivers also may sue in the courts of the United States by virtue of the act, without reference to the locality of their personal citizenship." Kennedy v. Gibson, 8 Wall. 498, 506, 507.

This rule was carried to great length, and much beyond the necessities of the case at bar, in Ex parte Crow Dog, 109 U. S. 556, 558, 3 Sup. Ct. 396. A clause of the act of congress regulating intercourse with the Indian tribes was omitted from, and thereby repealed by, the Revised Statutes of the United States, but was afterwards restored by act of congress. The supreme court held that the omitted clause was in force all the time, saying:

"It is assumed for the purposes of this opinion that the omission in the original revision was inadvertent, and that the restoration evinces no other intent on the part of congress than that the provision should be considered as in force, without interruption, and not a new enactment of it for any other purpose than to correct the error of the revision."

When a defendant is sued alone in a court of the state of which he is a citizen, by a citizen of another state, and the causes of action are such that the suit might properly have been brought against him and another if the plaintiff so elected, he confessedly cannot remove the suit. Now, when the suit is brought on these same causes of action against him and another by the same plaintiff, in which there is—as there must be to give the right of removal at all—a controversy wholly between him and the plaintiff, what possible reason can be suggested why he should have the right to remove that controversy for trial into the circuit court in the one case, and the right be denied to him in the other? It is the same suit and the same controversy, and between the same parties, whether he is sued alone or with another. If he must be content with the justice of the courts of his own state in the one case, why not in

the other? It would be difficult to conceive an intention in congress to make such a senseless and absurd distinction. It is a canon of construction that every interpretation of a statute that leads to such results ought to be rejected. The mischief to be remedied by the act of 1887 was the excessive jurisdiction conferred on the circuit courts by the act of 1875. The supreme court has said repeatedly that the act of March 3, 1887 (24 Stat. 552, c. 373), as corrected by the act of August 13, 1888 (25 Stat. 433, c. 866), "was intended to contract the jurisdiction of the circuit courts of the United States, whether original over suits brought therein, or by removal from the state courts." Hanrick v. Hanrick, 153 U. S. 192, 197, 14 Sup. Ct. 835. In the case of In re Pennsylvania Co., 137 U. S. 451, 454, 11 Sup. Ct. 141, Mr. Justice Bradley, speaking for the supreme court, said: "The general object of the act is to contract the jurisdiction of the federal courts." In the case of Smith v. Lyon, 133 U. S. 315, 320, 10 Sup. Ct. 303, Mr. Justice Miller characterized it as "a statute mainly designed for the purpose of restricting the jurisdiction of the circuit courts of the United States." In Fisk v. Henarie, 142 U. S. 459, 467, 12 Sup. Ct. 207, Chief Justice Fuller, in delivering the opinion of the court, said: "The attempt was manifestly to restrain the volume of litigation pouring into the federal courts, and to return to the standard of the judiciary act.  *  *  *" By reference to the fourth clause of the second section, which we have quoted, it will be observed that it does not name any amount as requisite to give jurisdiction where the suit is removed on the ground of prejudice or local influence, and it was contended that removals upon this ground could be made without regard to the amount in controversy, and this contention was upheld by some of the circuit courts; but the supreme court of the United States, giving effect to the obvious purpose and intention of the act, held, in effect, that the requirement as to the amount necessary to give jurisdiction in other removal cases must be imported into this clause of the act, and that the suit could not be removed on the ground of prejudice or local influence unless the amount in controversy exceeded $2,000. In re Pennsylvania Co., supra. Again, as to the time when the application for removal must be filed, the same clause of the act, in express terms, declares it may be done "at any time before the trial thereof"; but the supreme court, taking into consideration all the provisions of the act, and the previous legislation on the subject, and the judicial expositions thereof, held that this language of the act ought not to receive a literal interpretation, but that it should be construed as requiring the petition "to be filed before or at the term at which the cause could first be tried, and before the trial thereof." Fisk v. Henarie, supra. The intention of the act of 1887 is to confine the right of removal in all cases to defendants who are nonresidents of the state in which they are sued. The plaintiff, when he sues in the state court, having selected that forum, must remain there, whether he be a citizen of that or some other state. The defendant who is sued can only remove the suit when it is brought in a state other than that in which he resides. This, in the language of Chief Justice Fuller in Fisk v. Hen-

arie, supra, is a "return to the standard of the judiciary act" of 1789, concerning which Mr. Rawle says: "But, if a   *   *   *   citizen of another state has commenced the suit, he cannot afterwards remove it, for he is bound by his own selection; nor can the defendant remove, for he is not to be apprehensive of the injustice of the courts of his own state." Rawle, Const. c. 25, p. 223. It is obvious, therefore, that the act of 1887, so far at least as relates to the removal of suits on the ground of a separable controversy, intended to return to the rule of the act of 1866, which first gave the right, and limited it to "the defendant who is a citizen of a state other than that in which the suit is brought." Evans, having wrongfully removed the case into the circuit court, must pay the costs in that court, as well as the costs of the appeal to this court. Hanrick v. Hanrick, supra. The decree of the circuit court is reversed, and the cause remanded, with directions to that court to vacate all orders and decrees made therein, and remand the same to the state court from whence it was removed.

SANBORN, Circuit Judge. I concur in the result in this case on the ground first stated in the opinion.