Peele, J.,
dissenting:
I dissent from the conclusion of the court in this case and will briefly state my reasons:
During the lifetime of the claimant’s decedent he presented to the Secretary of War for payment a similar, if not the identical, claim in part now presented, and that officer, who was charged with the execution of the act presently to be cited, refused payment on the advice of Attorney-General Devens (16 Op. Atty. Gen., 420).
The Attorney-General, in respect of the annual compensation provided for by the act, had, as stated at page 421 of the *291 opinion, previously given it as bis opinion that “the annual compensation could not be paid for periods during which the channel was not maintained, and that the times of those payments (which were termed quarterly) were necessarily postponed when such periods of failure occurred, so as to exclude such periods from the quarterly and annual payments provided for;” and with that opinion in respect to the annual compensation provided for b}' the act March 3,1875 (18 Stat, L., 463), and the amendatory act thereto of March 3,1879 (20 Stat L., 376), the Attornej'-General sajrs:
“I remain satisfied and now assume it to be correct.”
Then further along in that opinion, referring to the interest on the SI, 000,000 held as security for the performance of the contract on the part of the claimant’s decedent, and which is the subject of contention in this action, he says:
“The sum held in pledge is distinctly retained as security for the maintenance of the channel. How Mr. Eads could bo fairly entitled to interest upon the same during the periods when the channel is not maintained it is not eas3r to perceive. It is contended, however, that this is the precise language of the statute, and that any other construction violates the language. But any construction which would give to Mr. Eads interest during the periods of failure would violate the whole spirit of the act, and would lead to a result, if the act itself as a whole is - considered, so clearly at variance with it as to be inadmissible. According to this theory Mr. Eads, even if he failed to maintain the channel permanently, would still be entitled to these semiannual payments, and a securitj'- given for the maintenance of the channel would result only in this— that the party would not at the end of the twenty years receive the principal sum, but would be entitled to a claim against the United States for the interest on that principal sum for an indefinite number of years. The meaning of the legislature is to be ascertained not only by the precise words used in a phrase of the statute, but by the reason and motive upon which it proceeded, by the end in view, and by the purpose which was designed.” (The United States v. Freeman, 3 How., 556; Becke v. Smith, 2 Mee. & W., 195; Attorney-General v. Lockwood, 9 Mee. & W., 398.)
In that decision’the claimant’s decedent acquiesced, but after his death, and after a large part ■ of the claim was barred by the statute of limitations, his legal representatives filed their *292 original petition in this court (September 9, 1901) more than twentjr years after that opinion by the Attornej'-General.
The claim in this case arises, not by reason of any default or failure on the part of the Government, but wholly by reason of the default and failure, on the part of the claimant’s decedent to keep the channel at the required depth and width as contracted for by him under the acts hereinbefore referred to.
By the provisions of the original act referred to it was, among other things, provided that—
“ When a channel thirty feet in depth and three hundred and fifty feet in width shall have been obtained by the effect of said jetties and ■ auxiliary work aforesaid, the remaining one million dollars shall be deemed as having been earned by said Eads and associates; but said amount shall remain as security in the possession of the United States for the purposes hereinafter set forth, interest at five per centum per annum on the same being_ payable to said Eads, his assigns, and legal representatives, semiannually, from the date when a channel thirty feet in depth and three hundred and fifty feet in width shall have been first secured, so long as said money or any part thereof, is held by the United States.”
It was further provided in said original act that—
.c* * Jf any failure to maintain such channel of thirty feet in depth and three hundred and fifti’' feet in width shall occur, the date for releasing said money held in pledge shall be postponed for an equal period of time, and the compensation for maintaining said channel shall cease until said depth and width shall be again restored, the maintenance of a channel thirty feet in depth and three hundred and fifty feet in width for twenty years, exclusive of all such periods of failure, being intended by this act.”
From the act it will readily be seen that if the claimant’s contention be correct, his condition would be better by reason of delay, to the extent of the interest earned on the money, than it would had he complied with his contract; for in the latter case he would have only received interest on the money up to that date. Certainly the Government was not benefited bj' the default of the claimant’s decedent, and yet the claimant’s contention is that no matter how long the releasing of the “ money held in pledge shall bo postponed” by reason of such default the}^ are, nevertheless, entitled to the 5 per cent *293 interest, “so long as said money or any part thereof is held by the United States.” That is to say, they claim damages growing out of the default of their decedent. It is no answer to say that the Government had the money in its possession during the period of delay, for the money was not held by way of a loan, but as security for the performance of the contract, and therefore by reason of such default the Government, and not the one in faiilt, was damaged at least to the extent of the interest during the period of such dela3r.
The act provides that, on failure to maintain the channel at a specified width and depth, “the date for releasing said money shall be postponed for an equal period of time;” and, further, in case of such failure it is provided that “the compensation for maintaining said channel shall cease until said depth and width shall be again restored.” And, then, that the purpose of the pledge, as well as the annual compensation, should not be misunderstood, it is provided that “the maintenance of a channel 30 feet in depth and 350 feet in width for twenty years, exclusive of all such periods of failure, being-intended by this act. ”
Now, to hold that the contractor is entitled to the same interest when he fails to comply with his contract as when he complies with it would be to defeat the purpose of the act in postponing “the date for releasing said money * * * for an equal period of time.”
That construction assumes that the Government is not damaged b3r the contractor’s default, and yet it is manifest that if the Government is required to pay interest on the securhy so held for a longer period of time than “twenty 3rears, exclusive of all such periods of failure,” that it will be damaged to that extent, at least.
If in law an3r interest was accruable under the contract during the period of such delay, it was a fixed sum, therefore not in the nature of a penalty, for a penalty recoverable under a contract is not the sum named, but the damages aetuaUy incurred, which latter is the subject of ascertainment In' proof.
In this case the interest is a fixed sum, and the period of dehiy being- conceded b3r the claimants, the aggregate amount *294 of interest during that period is ascertainable without proof on the part of the Government.
Where a time was specified for performance, the common law held such time to be “of the essence of the contract,” and such is now the mercantile conception of a contract (Norrington v. Wright, 115 U. S., 188), but under the contract in the present case provision is made in case of failure to perform within the time specified, not, however, for the payment of damages to the party in fault, but for postponing the date for releasing the money, and during such period of delay the party in fault and not the innocent party should suffer.
If the contractor had abandoned the maintenance of the channel, as stated by the Attorney-General in his opinion—
“It certainly would not be unjust, nor would it be at Arariance with the veiy intent of this act, to hold that the United States might, by proper legislation, devote the sum thus held in pledge to the maintenance of the channel, by the expenditure of it through its own officers, or by any new contractor that might be selected.”
The whole statute must be construed together, and not a few words which seem to support the claimant’s contention that interest should be paid “ so long as said money, or any part thereof, is held by the United States.” Those words are found in the provision quoted, reciting that the 11,000,000 “shall remain as security in the possession of the United States for the purposes hereinafter set forth,” during which time interest at 5 per cent shall be paid; but when we examine the contract embodiedin the statute, further along we see the purposes for which the security ivas held and under what conditions the same was to be released.
I am, therefore, of the opinion that the Attornej^-General was correct in his view of the law, and that construction having been acquiesced in by the claimant’s decedent during his lifetime, the Government should not now be held liable to pay damages, especially when it is without fault, and therefore in my view of the case the petition should be dismissed.