**SOLARIS MARINE LIMITED, by its Attorney-in-Fact PETER J. HOWARD, Plaintiff**

v.

**CLAUDE LAGARRIGUE, Individually, VISIONES INTERNATIONALES, S.A PANAMA, THE YACHT "SERENDY" and ANY OTHER PERSONS HAVING AN INTEREST THEREIN, Defendants**

**JEAN BELLANGER, Intervenor**

Civil No. 81-52

District Court of the Virgin Islands

Div. of St. Thomas and St. John

September 17, 1981

CHRISTIAN, *Chief Judge*

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter having been tried before the Court from May 27, 1981, through May 29, 1981, and the Court having fully considered the evidence submitted through testimony and exhibits, the Court makes the following Findings of Fact and Conclusions of Law, supplementing the Findings of Fact and Conclusions of Law dictated from the bench on May 29, 1981.

The plaintiff, Solaris Marine Limited, brought this admiralty action in rem against the defendants Claude Lagarrigue, Visiones Internationales, S.A. Panama, and the Yacht "Serendy" for an alleged debt giving rise to a maritime lien against the "Serendy". The "Serendy" was subsequently arrested on February 7, 1981, pursuant to a warrant of arrest issued by this Court. The "Serendy" has since remained in the custody of the Court. Jean Bellanger was subsequently permitted to intervene in this action on his allegations that he also had a debt due and owing which created a maritime lien against the "Serendy." Intervenor Bellanger also alternatively asserted that he had a civil action at law against the defendants Claude Lagarrigue and Visiones Internationales, S.A. Panama, and was permitted to consolidate that civil action with the instant admiralty action. The main issues presented for resolution at trial were

whether the defendants were indebted to the plaintiff and/or intervenor, the monetary amount of any alleged indebtedness, and whether any such alleged indebtedness gave rise to a maritime lien against the "Serendy." The Court will first discuss the relevant facts as developed at trial before turning to our analysis of the legal issues.

## FINDINGS OF FACT

1. The plaintiff, Solaris Marine Limited, a British corporation presently in liquidation, constructed the Yacht "Serendy" at its shipyard in Southampton, England, for the defendant Claude Lagarrigue, pursuant to an agreement it made with Claude Lagarrigue while he was a director of Solaris Marine Limited and he was residing in England.

2. Defendant Claude Lagarrigue subsequently executed documents which purported to vest ownership of the "Serendy" with the defendant Visiones Internationales, S.A. Panama. However, Visiones Internationales, S.A. Panama, paid no consideration for that transfer, had never expended any sums of money for materials, supplies or repairs to the "Serendy", and has never operated the "Serendy" or taken part in managing the "Serendy" as a charter boat. Visiones Internationales, S.A. Panama, also failed to answer to or appear in this law suit.

3. On March 30, 1979, the defendant Claude Lagarrigue entered into an agreement in Paris, France, with the plaintiff Solaris Marine Limited, whereby the parties agreed that the balance due and owing to the plaintiff from the defendant for the construction of the Yacht "Serendy" was the sum of 28,700 pounds sterling. The agreement provided that Claude Lagarrigue would pay the foregoing sum in twelve installments over a period of three (3) years. However, if Claude Lagarrigue defaulted on any installment payment, the agreement stated that the entire balance would become due and payable and interest would then begin to accrue at the annual rate of two percent (2%) above the minimum lending rate of the Bank of England on the date of default. The agreement also provided that it would be governed by British law.

4. Defendant Claude Lagarrigue defaulted on the March 30, 1979, agreement with the plaintiff on March 31, 1980. The principal sum due and owing on the date of default was 21,851.50 pounds sterling. All the parties agreed at trial that the aforementioned sum converts to $45,460.00 in U.S. dollars.

5. In April of 1979, Claude Lagarrigue agreed that he would

reimburse Solaris Marine Limited for "all costs and ancillary expenses" if the "Serendy" was sold because Claude Lagarrigue defaulted on the March 30, 1979, agreement between the parties. See discussion of letter agreement in Finding of Fact 11, infra. The plaintiff testified at trial that it had incurred such reimbursable "costs and expenses" for the following activities: locating the Yacht "Serendy" and Claude Lagarrigue so that it could pursue its claims, arresting the vessel, hiring lawyers, and engaging in the instant litigation. However, the plaintiff did not individually itemize the aforementioned costs, testify as to their reasonableness, or provide any receipts for sums spent. Therefore, we make no findings as to those costs because the evidence was insufficient to establish the sums that were spent.

6. Turning to the facts of the intervenor's claim, on April 1, 1978, the intervenor Jean Bellanger sent a letter to defendant Claude Lagarrigue stating the terms of a prior oral agreement. Defendant Claude Lagarrigue subsequently signed the letter noting his approval of the agreement and adding several terms. The basic provisions of that agreement are as follows: The intervenor agreed to lend the defendant Claude Lagarrigue 450,000 French francs in order to help the defendant Claude Lagarrigue finance the construction of the Yacht "Serendy". Claude Lagarrigue agreed to repay the principal in ten yearly installments, the first installment to be paid on December 31, 1979. He also agreed that the principal would be indexed yearly according to an undetermined cost of living index. The agreement also gave Jean Bellanger either the right to charter the "Serendy" for personal use by himself and five (5) other persons during the month of August free of charge, or, at the option of Jean Bellanger, the right to receive twelve percent (12%) annual interest on the indexed principal in any calendar year in which the option to charter during the month of August was not exercised.

7. According to the provisions of the agreement between the intervenor and defendant Claude Lagarrigue, Jean Bellanger lent Claude Lagarrigue 450,000 French francs. All the parties agreed at trial that the aforementioned sum converts to $80,357.14 in U.S. dollars.

8. On August 25, 1978, Jean Bellanger and Claude Lagarrigue executed a document at the Panamanian consulate in Barcelona, Spain, which purported to be a first mortgage on the Yacht "Serendy" in favor of Jean Bellanger. The mortgage document was written in Spanish and allegedly drawn up in accordance with Panamanian law. The purported mortgage bears an incorrect execution date of June 10,

1978. The purported mortgage was never registered in Panama, nor was the Yacht "Serendy" itself registered in Panama, or in any other country.

9. In October of 1978, Jean Bellanger lent Claude Lagarrigue the additional sum of 24,000 French francs so that Claude Lagarrigue could make various payments incurred by him in connection with the Yacht "Serendy". All the parties agreed at trial that the aforementioned sum converts to $4,285.71 in U.S. dollars.

10. In February of 1979, Jean Bellanger sent Claude Lagarrigue a letter stating inter alia, that he did not wish to charter the "Serendy" during August of 1979 and therefore was entitled to receive interest on his loan for that year.

11. On April 5, 1979, Jean Bellanger sent another letter to Claude Lagarrigue stating the terms of a new agreement between the parties. Claude Lagarrigue subsequently signed the letter noting his approval of the agreement. A relevant provision of that agreement was that the "Serendy" was to be sold by Claude Lagarrigue if he defaulted on the March 30, 1979, agreement with Solaris Marine Limited, or if he did not make the agreed loan payments to Jean Bellanger. The agreement also provided that if the "Serendy" was sold for the foregoing reasons, Claude Lagarrigue would reimburse Solaris Marine Limited and Jean Bellanger for "all costs and ancillary expenses".

12. On September 6, 1979, Jean Bellanger sent Claude Lagarrigue a letter stating inter alia, that he did not wish to charter the "Serendy" during August of 1980.

13. On April 1, 1980, Jean Bellanger notified Claude Lagarrigue that he must either pay his debts or sell the "Serendy".

14. Claude Lagarrigue never paid any portion of his debts to Jean Bellanger, nor did Claude Lagarrigue sell the "Serendy".

15. The intervenor Jean Bellanger testified that he had expended various sums of money to pursue his claims against Claude Lagarrigue and to engage in the instant litigation. However, the intervenor did not individually itemize the aforementioned costs, testify as to their reasonableness, or provide any receipts for sums spent. Therefore, we make no findings as to those costs, because the evidence was insufficient to establish the sums that were spent.

## CONCLUSIONS OF LAW

1. *Claude Lagarrigue is the sole owner of the Yacht "Serendy".*

The facts of this case clearly indicate that the Yacht "Serendy" is owned solely by Claude Lagarrigue. Although Visiones

Internationales, S.A. Panama, is the owner in name of the Yacht "Serendy" on various documents, all the indicia of ownership have been exercised by Claude Lagarrigue. See Finding of Fact 2, supra. This Court will therefore pierce the sham of corporate ownership and declare that Claude Lagarrigue is the sole owner of the Yacht "Serendy". See generally Swift & Co. Packers v. Compania Colombiana Del Caribe, 339 U.S. 684 (1950) (admiralty court has the power to determine whether transfer of ownership of vessel was fraudulent).

2. *Solaris Marine Limited has a maritime lien.*

Claude Lagarrigue and the plaintiff both agreed at trial that Claude Lagarrigue was indebted to the plaintiff for sums of money expended by the plaintiff for the construction of the Yacht "Serendy". However, defendant Claude Lagarrigue argues that such a debt does not give rise to a maritime lien under United States admiralty law, see 1 Benedict on Admiralty § 188, and that therefore the plaintiff was not entitled to bring an in rem action against the Yacht "Serendy". The plaintiff contends that British law is applicable to this action, and that under British law the plaintiff has a maritime lien. Section 1(1)(n) of the 1956 Administration of Justice Act, a British law currently in full force and effect, provides that a maritime lien arises from "any claim in respect of the construction, repair or equipment of a ship . . . ." We agree that British law should apply.

The United States Supreme Court has stated that issues of conflicts of law in admiralty cases should be resolved by "ascertaining and valuing points of contact between the transaction and the states or governments whose competing laws are involved." Lauritzen v. Larsen, 345 U.S. 571, 582 (1953). The Second Circuit Court of Appeals has specifically applied the principles of Lauritzen where the applicable law governing the status of a lien was at issue. Rainbow Line, Inc. v. M/V Tequila, 480 F.2d 1024, 1026–27 (2nd Cir. 1973). In Rainbow, the Second Circuit aptly enumerated and discussed the various points of contact to be considered when determining which law should apply. We adopt the reasoning and analysis of Rainbow, and will apply its points of contact test to the facts of the instant case.

The first point of contact to be considered is the country of registration of the vessel. This consideration is irrelevant in the instant case because the Yacht "Serendy" was not registered in any country. Another relevant issue is the nationality of the parties involved in the dispute. The plaintiff is a British corporation and the

566

defendant Claude Lagarrigue is a French national who was a British resident and a director of a British corporation at the time the obligation was initially incurred. The law governing the agreement between the parties is also pertinent. The March 30, 1979, agreement provided that British law would apply. Finally, it is important that the "Serendy" was constructed in Southampton, England. In sum, virtually all points of contact between the parties are British. The only connection of the United States with the dispute of the parties is that the Yacht "Serendy" was arrested in the United States Virgin Islands. Clearly, British law is applicable under the Rainbow test, and thus we hold that Solaris Marine Limited is a holder of a maritime lien of first priority against the Yacht "Serendy".

3. *Solaris Marine Limited is entitled to interest on the principal sum of the indebtedness.*

The plaintiff contends that it is entitled to accrued interest on the principal sum of $45,460.00 owed to it by the defendants at the annual rate of nineteen percent (19%) (two percent (2%) above the minimum lending rate of the Bank of England on March 31, 1980) from March 31, 1980, the date of default, to May 29, 1981, the date of judgment, as provided in the March 30, 1979, agreement between the parties. The defendant Claude Lagarrigue argues that the plaintiff is not entitled to any interest for two reasons.

First, Claude Lagarrigue contends that the plaintiff did not introduce any evidence at trial regarding what the minimum lending rate of the Bank of England was on March 31, 1980. He concludes that the Court can thus make no interest award as the rate of interest was not established. The plaintiff countered this argument with the contention that this Court can take judicial notice of the March 31, 1980, minimum lending rate of the Bank of England pursuant to Fed. R. Evid. 201, and therefore the lack of evidence was not fatal to its claim for interest. We agree with the plaintiff.

■■ Fed. R. Evid. 201 provides that a court "shall take judicial notice if requested by a party and supplied with the necessary information" when the fact to be judicially noticed is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." In this case, the plaintiff pointed out that the March 31, 1980, minimum lending rate of the Bank of England could be readily verified by resort to such reliable sources as the London Times and the Wall Street Journal. Indeed, upon inquiry to the Wall Street Journal, this Court was able to

verify that the applicable minimum lending rate of the Bank of England was seventeen percent (17%), as the plaintiff had stated.

Claude Lagarrigue's second contention is that even if the nineteen percent (19%) interest rate was established, no interest can be collected because such an interest rate is usurious, and thus all interest on the debt must be forfeited pursuant to the provisions of 11 V.I.C. § 954. On March 30, 1979, the date of the agreement at issue, Virgin Islands law provided that the maximum amount of interest that could be charged by express agreement in a contract was thirteen percent (13%). See Act Feb. 13, 1979, No. 4261, § 1, Sess. L. 1979, p. 3, amending 11 V.I.C. § 951(b). The plaintiff's argument is that Virgin Islands usury law is inapplicable to the March 30, 1979, agreement, as the contract specified that it was to be governed by British law. The plaintiff's contention is correct. Thus, as the defendant did not provide the Court with any British law which provides that the March 30, 1979, agreement is usurious, the interest charges will be enforced.

4. *Claude Lagarrigue is personally indebted to Jean Bellanger.*

Claude Lagarrigue agreed at trial that he was personally indebted to the intervenor for the sums of money that were loaned to him. However, he disputed the intervenor's contention that the intervenor's claims created a maritime lien against the "Serendy". The intervenor argues that he has a maritime lien pursuant to either British law or American law.

■ The intervenor's primary argument is that the mortgage executed on August 25, 1978, at the Panamanian consulate in Barcelona, Spain, should be governed by British law, and under British law, the mortgage creates a maritime lien. See § 1(1)(c) of the 1956 Administration of Justice Act. We conclude that British law is not applicable to the mortgage agreement, as England does not have the most significant contacts with that agreement. Applying the Rainbow test, discussed in Conclusion of Law 2, supra, we find the following to be the relevant contacts. Both the intervenor and the defendant Claude Lagarrigue are French nationals. There was no evidence presented that Claude Lagarrigue was a resident of England at the time the mortgage was executed. The mortgage agreement is written in Spanish, was executed at a Panamanian consulate, and was purportedly drawn up in accordance with Panamanian law. The only significant British contact with the mortgage agreement is the fact that the mortgaged vessel was constructed in England, and this is not enough to make British law applicable.

■■ The intervenor also argues that the mortgage agreement creates a maritime lien against the "Serendy" under American law. Although ship mortgages ordinarily do not constitute maritime liens under American admiralty law, see 1 Benedict on Admiralty § 181 at 11-1, a mortgage which is a "preferred ship mortgage" pursuant to the provisions of 46 U.S.C. § 951 et seq. does create a maritime lien. The intervenor contends that he has a foreign preferred ship mortgage. We disagree. One of the necessary requirements for a foreign preferred ship mortgage is that it was "duly and validly executed in accordance with the laws of the foreign nation" and "duly registered". 46 U.S.C. § 951. These requirements were not met, see Finding of Fact 8, supra and thus the mortgage is not preferred.

■ In sum, we find that the debt to the intervenor did not give rise to a maritime lien, but only created a personal liability of the defendant Claude Lagarrigue. However, the intervenor Jean Bellanger is nevertheless entitled to the residue of the proceeds of a court ordered sale of the "Serendy". See Andrews v. Wall, 44 U.S. 565 (1845); 1 Benedict on Admiralty § 181 at 11-1.

*5. Jean Bellanger is not entitled to "index" the principal sum of $80,357.14.*

■ The April 1, 1978, letter sent by Jean Bellanger to Claude Lagarrigue provided that the principal sum of $80,357.14 loaned to Claude Lagarrigue would be adjusted yearly according to an undetermined cost of living index. At trial, Jean Bellanger testified that the sum he was seeking to recover from Claude Lagarrigue included a cost of living index adjustment to the $80,357.14 loan. However, there was no testimony or evidence presented regarding which index was used, how the index was chosen, or even what the index figure was. Absent the introduction of such information at trial we cannot allow recovery of the sum representing the claimed index adjustment.

*6. Jean Bellanger is entitled to interest on the principal sum of $80,357.14.*

Jean Bellanger contends that he is entitled to accrued interest on the principal sum of $80,357.14 owed to him by Claude Lagarrigue at the annual rate of twelve percent (12%) from January 1, 1979, to May 29, 1981, the date of judgment, as provided in the letter sent by Jean Bellanger on April 1, 1978. The defendant contends that such an interest rate is usurious under Virgin Islands law and therefore should be forfeited pursuant to the provisions of 11 V.I.C. § 954. We disagree.

On April 1, 1978, Virgin Islands law provided that twelve percent (12%) interest could be charged by express agreement in a contract. See Act July 8, 1977, No. 4005, Sess. L. 1977, p. 110, amending 11 V.I.C. § 951(b). Thus, even if Virgin Islands law were applicable to the agreement between Jean Bellanger and Claude Lagarrigue, the interest charge was lawful.

The foregoing Findings of Fact and Conclusions of Law provide the ratio decidendi for our judgment entered on May 29, 1981.