### CLAGUE ET AL. vs. THEIR CREDITORS.

#### APPEAL FROM TAE COURT OF THE PARISH AND CITY OF NEW ORLEANS.

An agreement made in New York to be executed there, must be governed by the laws of that state—if such contract is usurious and void by the laws of New York it will be considered so here, because this court must decide the cause here as it would be decided there. The statute of the state of New York prohibits taking more than seven per cent for the loan of money, and by the terms of the statute the prohibition is extended to wares, merchandise, *or any thing else.*

If in the exchange of notes between A and B, more than seven per cent per annum as interest be taken, the contract is tainted with usury, and void according to the decisions of the courts of New-York on that statute.

Those courts have established the maxim that by no shift or device can more interest be taken, or profit made, than that which the law permits on the loan of money.

When A agrees with B to exchange their respective notes bearing interest at the rate of six per cent. per annum, and in consideration thereof to insure with B the lives of different individuals, and to consign his sugar crop in Louisiana to B, for sale in New York on commission, this agreement is null and void under the aforesaid statute of New York against usury.

The facts are fully stated in the opinion of the Court, delivered by Porter J.

The Bank of the United States—the Bank of Louisiana —John Humphreys, and others, creditors of the insolvents, appeal from a judgment of the Parish Court, by which Israel Barker was placed on the tableau of distribution as a creditor.

Barker's claim is founded on an assignment made to him of notes executed by the firm of Kenner & Co. in favor of certain persons, by whom they were endorsed to a corporation in New-York, known by the name of " The Life and

Eastern District.
December, 1830.

CLAGUE ET AL.
vs.
THEIR CREDI-
TORS.

Fire Insurance Company." The consideration of these notes was a contract entered into by the insolvents with this Company, by which the parties agreed to exchange their notes, payable at a distant time from the date of the agreement, with interest at six per cent. The insolvents at the same time covenanted to insure, and did insure a certain number of lives with the office at the usual rates. It also made a part of the contract, that the crops of the insolvents sugar estate should, be annually shipped to the Company and sold by them on the usual commissions.

To the claim of the appellee, growing out of this contract, the defence of usury is opposed.

The agreement was made in New-York, and was to be there executed: it must therefore be governed by the laws of that State. They prohibit the taking of more than seven per cent for the loan of money, and by the terms of the statute, the prohibition is extended to wares, merchandise, or *any thing whatsoever*.

The courts of that state have held under these provisions, that if A exchanges notes with B, and takes two and a half per cent commission for doing so, the contract is tainted with usury and void.—13 *Johnson* 4 *v.* 16 *ibid*. 367.

There cannot therefore, we think be a doubt, that if more than seven per cent was taken for the exchange of the notes now sued on, the contract was void, but whether it was so taken is the true difficulty in the case.

The obligations of each party bore interest at six per cent ; and so far there was such equality as repels the idea of usury. But it is urged, the Life and Fire Insurance Company had a profit on the insurance of the lives and on the sales of the sugar, which bring them within the penalties of the statute. The appellee contends that these transactions were each of them fair in themselves, and that if profits were made or to be made, a good consideration existed for them, independant of the exchange of notes—namely : the

*An agreement made in New York to be executed there, must be governed by the laws of that state —if such contract is usurious and void by the laws of the state of N. York it will be considered so here because this court must decide the cause here as it would be decided there. The statute of the state of N. York prohibits the taking more than seven per cent for the loan of money, and by the terms of the statute the prohibition is extended to wares, merchandises, or any thing whatsoever.*

Eastern District
*December* 1830-.

CLAGUE & AL.
*vs.*
THEIR CREDI-
TORS.

risk incurred in the insurance—and the labour bestowed, and pains taken in the sale of the crop.

We assume for a moment, that the Life and Fire Insurance Company refused to exchange their notes, unless the insolvents would also insure lives at their office and ship their crops to the Company for sale. The question then is, does the circumstance of the lender refusing to accommodate the borrower, unless the latter will enter into another contract, on fair terms, which apart from and unconnected with the lending, would be fair and legal, render the agreement for the loan of money, or the exchange of notes, null and void ? It is one which on the first consideration of it, and for some time after, did not appear free from difficulty to us; further reflection, however, and a more attentive consideration has satisfied our minds, that it would not present a case of much embarrassment to the courts of the country where the contract was made. If the matter were *res integra* there would be, perhaps, considerable force in the objection, that the object of the statutes against usury was to protect the borrower against paying more than the legal interest. That when that object was attained, the laws cared not how much the lender received, and that he might innocently profit by the collateral agreement, when he did not take advantage of the borrower's necessities, to compel him to enter into an unequal and disadvantageous contract, in relation to other matters.

If in the exchange of notes between A and B, more than seven per cent per annum be taken, the contract is tainted with usury, and void according to the decisions of the courts of New York on that statute.

But the question is not *res integra* in the jurisprudence of that country where the agreement was made. The legislature of New-York, in imitation of that of England, seems to have had a great abhorrence of the offence of usury, and to have guarded against its commission, by prohibitions couched in language, at once as particular and comprehensive as words can express. Their courts of justice have not fallen behind the law makers in their determination to repress and punish the offence, and the statute with the dici-

sions on it, seems now to have established the maxim, that by no shift or device which the wit of man may invent, can more interest be taken, or profit made, than that which the law permits. Whether the borrower loses or not: the bargain which is connected with the loan seems to be considered as immaterial. The rule is, the lender shall not obtain more than the legal interest. We need not cite the cases. An examination of them we think, will shew the principle just stated, to result from the decisions of the common law courts on the statute against usury. We may however, refer to a very late decision in the Supreme Court of the United States, where this strong language is used: "a profit *or* loss incurred on the necessities of the borrower, no matter what shape it assumes, has always been adjudged to be a violation of the statute." *2d Peters* 537.

In the instance before us, the notes of each party bore interest at six per cent, and so far there was a perfect equality, but the Insurance Company refused to make the exchange, unless the insolvents insured lives, and agreed to send their crops to the company for sale. Profit such as this to the lender, or burthen on the borrower on a loan or exchange of notes the statute of New-York forbids, and we, who must decide the cause here as we think it would be decided there, are consequently compelled to consider the transaction void.

It was said, there was no evidence the Life and Fire Insurance Company made these matters a condition without which they would not give their notes. That for aught what appears on record, they may have applied to the insolvents to exchange their notes, and that the latter refused, unless the former would permit them to insure lives, and send them their sugar for sale.

There is no direct proof on record which of the parties proposed the exchange, but the conviction produced by the internal evidence presented by the transaction, is nearly as

Eastern District.
*December*, 1830.

CLAGUE
*vs.*
THEIR CREDITORS.

Those courts have established the maxim that by no shift or device can more interest be taken, or profit made, than that which the law permits on the loan of money.

Where A agreed with B to exchange their respective notes bearing interest at the rate of six per cent per annum and in consideration thereof to insure with B the lives of different individuals, & to consign his sugar crop in Louisiana to B for sale in New York on commission, this agreement is null and void under the aforesaid statute of N York.

Eastern District
December, 1830

CLAGUE
vs,
THEIR CREDI-
TORS.

strong as any thing can be, that the first proposition came from the insolvents. The endorsement required on their notes—the mortgage taken on their plantation—the promise to send their crops for sale, all indicate, in a manner too clearly to be misunderstood, who was embarrassed, and who connected these agreements with the exchange of the paper. When we join to these reflections the utter improbability of a commercial house in New-Orleans going to New-York to insure lives, unless they were compelled to do so to relieve their pecuniary necessities, not a doubt remains on our minds that the transaction was such a one as the appellants represent it.

It is therefore ordered, adjudged and decreed, that the judgment of the Parish Court be annulled, avoided, and reversed, and it is further ordered, adjudged and decreed, that the tableau be amended, by expunging therefrom the claim of Barker for the notes given by the insolvents to unite the contract with the Life and Fire Insurance Company, and it is further ordered that the appellee pay the cost of the appeal.