POOLEY
v.
SNOW.

---

HEZEKIAH HAWLEY *v.* A. G. SLOO.

12 815
52 1741

A promissory note payable generally must bear the rate of interest of the place where it is made.
If the place of performance is different from that of the contract the interest will be according to the latter.

APPEAL from the Fourth District Court of New Orleans, *Reynolds,* J. *Elmore & King,* for plaintiff. *Mott & Frazer,* for defendant and appel-lant.

MERRICK, C. J. Plaintiff alleges in his petition that defendant is a resident of Indiana. He commenced the present suit against him by attachment as such absentee. It is admitted that the plaintiff resides in Tennessee and that the rate of interest in that State is six per cent.

The obligation sued on is in these words:

$5,325 10. On the first day of December next, I promise to pay to the order of Hezekiah Hawley five thousand three hundred and twenty-five dollars for value received. Witness my hand and seal this 18th November 1854.

(Signed) A. G. SLOO. [Seal.]

We do not consider the words "Hezekiah Hawley, Memphis, Tenn." as form-ing any part of the instrument, it being probably a mere label upon the note put there by the holder for his convenience and security.

The judgment of the lower court decrees in favor of the plaintiff six per cent. interest upon the amount of the note, according to the law of Tennessee. The defendant has appealed and contends that plaintiff cannot recover more than five per cent. interest.

Plaintiff's counsel maintains that the decision of the lower court is correct on these grounds, viz: that it must be presumed from the domicil of both plaintiff and defendant, that the note was executed in a common law State; that this court will take judicial notice of the common law, by which "It is a general rule that where there is a precedent debt or duty, the creditor need not allege or prove any demand of payment before the action brought, it being the duty of the debtor to find out his creditor and tender him the money," (Chitty on Bills, p. 249, 7th edition) and that the note sued on was therefore payable in the State of Tennessee, the domicil of the creditor, and drew the rate of interest allowed in that State.

For the purpose of the decision of this case, we will allow the somewhat forced presumption that the note was made in a common law State.

The passage quoted above from Chitty on bills, we think, has reference par-ticularly to the defence of the *maker* of a note and *acceptor* of a bill on an

·Hawley
*v.*
Sloo.

action to be brought on the bill of exchange or promissory note. We do not suppose the learned author intended to assert that it was the duty of an Englishman, without any special promise so to do, to follow his creditor out of the realm, say to New York or California, and there make payment according to the rate of interest allowed by those States. The contrary seems to be clearly established by the common law writers as well as by the decisions of this court. The subject is considered by Story on promissory notes, sec. 49. He says: "In the next place, as to the place where a promissory note is made or is payable. By our law, it is not essential that any place of making or of payment should be specified on the face of the note, unless specially provided for by statute. It is usual indeed, in the date, to include the place where the note is made; and this in many cases may be very important, in order to ascertain the proper rules by which it is to be interpreted; for the interpretation will be, or may be essentially governed by the law of the State where it is made. But, in the absence of any place stated on the face of the note, resort may be had to parol evidence to establish the validity of the note as well as to impeach it. But very different considerations will apply to the place of payment; for, if the note is intended to be paid at any particular place, *that place must be stated in the instrument, and parol evidence is not admissible to show that although no place of payment is therein stated, yet the parties agreed that it should be payable at a particular place.* It is not sufficient to make the note payable at a particular place, that there should be a memorandum of the place where it is payable, at the foot or in the margin thereof, but it should be in the body of the note itself and constitute a part thereof." See also Chitty on Bills, 151, 154, 165. 11th American from 9th London edition.

Chief Justice Parker, cited by Mr. Justice Story, says: "When a merchant of France, Holland or England enters into a contract in his own country, he must be supposed conversant with the laws of the place where he is, and to expect that his contract is to be judged of and carried into effect according to those laws; and the merchant with whom he deals, if a foreigner, must be supposed to submit himself to the same laws, *unless he has taken care to stipulate* for a performance in some other country, or has in some way excepted his particular contract from the laws of the country where he is." Story, Conflict of Laws, § 278.

So bills drawn in Ireland to be filled up in England, as to dates, sums, times of payment and drawees, relate back to the date of the original signature of the drawer, and are to be deemed Irish bills. *Smith* v. *Mingay,* 1 M. & Selwyn, 87.

Kent says in his Commentaries that "parties are presumed to contract in reference to the laws of the country in which the contract is made; and it is a maxim that *locus regit actum* unless the intention of the parties to the contrary be clearly shown." 2 Kent, p. 258, 2d edition.

Chitty says that "effect is also to be given to the intention of the parties according to the law of the country where the contract is made and in which it is to be performed, and not according to the law of the country into which either or all of them may remove. ****. The construction and interpretation of the contract must be governed by the laws of the country where made—*lex loci contractus;* the mode of suing and the time within which the action must be brought must be governed by the law of the country where the action is brought: *in ordinandis judiciis, loci consuetudo ubi agitur.*" Same edition,

p. 168. In note 1 to p. 169, it is said "that as the law of the place where the contract is made regulates the rights and duties of the parties, if a bill be drawn and endorsed in a place by a person resident there, he is answerable upon such endorsement only so far as the laws of that country bind him upon a bill so drawn and endorsed. See also *Powers* v. *Lynch*, 3 Mass., 77; *Hicks* v. *Brown*, 12 John, 142.

Story, Conflict of Laws, also says in another place that "a contract to pay generally is governed by the law of the place where it is made; for the debt is payable there as well as in any other place." Sec. 317. The same doctrine is held in the recent case of *Peck* v. *Hibbard*, 26 Vermont, (Deane,) 698.

It follows that a note payable generally must bear the rate of interest of the place where made, for the general rule is that "by the common law the *lex loci contractus* will in all cases give the rule of interest following out the doctrines of the civil law *Quum judicio bonae fidei disceptatur, arbitrio judicis usurarum modus, ex more regionis ubi contractum constituitur; ita tamen ut legi non offendat.* And if the place of performance is different from that of the contract, the interest will be according to that of the former." Story, Con., § 296, 343, 345. See the case of *Brey* v. *Winter*, 4 N. S., 277; also 8 Savigny, p. 282, sec. 374, Berlin edition, and 3 An., 402, and C. C. Art. 10.

It is not shown or pretended by the argument that the note sued on was executed in Tennessee. If it be conceded that it was executed in Indiana, still, as it does not appear what rate of interest is there allowed, we must presume that it is the same as allowed in Louisiana, viz, five per cent.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed, and it is now ordered, a'd judged and decreed, that said Hezekiah Hawley do recover and have judgment against said Albert G. Sloo for the sum of five thousand three hundred and twenty-five dollars, with five per cent. interest thereon from the first day of December, 1854, until paid, with a privilege on the property attached, the plaintiff paying the costs of appeal and the defendant those of the lower court.