(89 South. 410)

No. 22684.

## FOX v. CORRY.

(Nov. 3, 1920. On Rehearing, June 15, 1921.)

*(Syllabus by the Court.)*

1. **Removal of causes** ⊚═45—**Resident defendant cannot remove the cause on sole ground of diverse citizenship, where action brought by nonresident plaintiff.**

Where a nonresident plaintiff brings suit in a state of which the defendant is a resident, such defendant cannot remove the cause to a federal court on the sole ground of diverse citizenship.

2. **Contracts** ⊚═144—**Interpretation and effect in every state must be same where made and to be executed.**

Subject to certain exceptions, the interpretation and effect of a contract, in every other state must be the same as where it was made and to be executed; hence—

3. **Principal and surety** ⊚═194(1)—**Suretyship; courts will determine contracts of suretyship and indorsement entered into and to be executed in another state in accordance with law of that state.**

The courts of this state will determine the rights of parties arising under contracts of suretyship and indorsement, entered into and to be executed in Mississippi, in accordance with the law of that state, as brought to their knowledge, or, in default of such knowledge, upon the assumption that it is the same as that of Louisiana.

4. **Principal and surety** ⊚═194(1), 196, 200(1)—**Suretyship; rights as to contribution between co-sureties stated; contribution recognized in courts of law.**

According to the law of Mississippi, as disclosed by the evidence and authorities cited: "Where a surety has paid the debt of a principal, he cannot make a cosurety liable to him without proof that he has actually paid the debt, and has made an ineffectual effort to obtain payment from the principal, or that he is insolvent; nor, where there are more than two sureties, and one has paid the whole debt, can he compel one of the others to repay him one-half, without proof of the insolvency of the other sureties." "In equity, if some of the sureties are insolvent, or out of the jurisdiction, the amount for which the cosureties are liable, in contribution, is apportioned among the solvent sureties, within the jurisdiction."

"While contribution is based upon equitable doctrines, and was first enforced in courts of equity, it is now generally recognized in courts of law, and, when practicable, enforced there on the theory of quasi contract, or implied contract between the sureties, to contribute, each, his proportionate share of what one alone is required to pay. * * * The action at law for contribution is generally brought, not on the original debt, but on the contract which the law implies, in the absence of express agreement, and is enforced in an action of assumpsit, under the common counts for money paid."

5. **Principal and surety** ⊚═194(7)—**Suretyship; that surety seeking contribution has paid part of debt since institution of suit held to require dismissal.**

Where, in an action by a surety, against a cosurety, for contribution (under a contract made and to be executed in Mississippi) the allegations of the petition are susceptible of the interpretation that plaintiff has paid the whole debt, and exception of no cause of action may properly be overruled; but where, on the trial, it appears that plaintiff has paid part of the debt and given a note for the balance, and evidence to show the payment of such balance, subsequently to the institution of the pending action, is objected to, the objection should be sustained and the action dismissed, as in case of nonsuit, since the matter should be determined with reference to the conditions of fact at the time of the filing of the exception, and plaintiff not allowed to profit by the ambiguity of his allegations.

6. **Principal and surety** ⊚═194(2)—**Suretyship; plea of novation and extinguishment of original debt held properly overruled.**

Where, after hearing of evidence in such an action as that above referred to, defendant filed a plea, alleging that the payment in part and the giving of a note for the balance operated the novation and extinguishment of the original debt and the discharge of defendant, as cosurety, sued for contribution, the plea was properly overruled; for according to the law governing the case it was a condition precedent to the enjoyment by plaintiff of the right to demand contribution from the cosurety that he should have paid the whole debt for which they were bound, and the law cannot be construed to mean that compliance with a condition required to secure a right destroys the right.

Appeal from Thirteenth Judicial District Court, Parish of Rapides; James Andrews, Judge.

Action by D. B. Fox against Hugh Corry. From the judgment, defendant appeals, and plaintiff prays for amendment. Judgment set aside, and judgment for plaintiff for part of his demands rendered.

Blackman, Overton & Dawkins, of Alexandria, for appellant.

J. W. Hawthorn, of Alexandria, for appellee.

### Statement of the Case.

MONROE, C. J. Plaintiff having bound himself jointly and severally with defendant and defendant's son, Arthur Corry, within a limit of $12,500, for loans, made or to be made by the First National Bank of Laurel, Miss., to the Laurel Lumber Company; the bank having made loans to the company of $1,000 and $6,500 upon its notes for those amounts, executed by Arthur Corry, its secretary, treasurer and active manager, and bearing interest at the rate of 8 per cent. per annum; the company having gone into bankruptcy, leaving the notes unpaid; and Arthur Corry having become insolvent; the bank having sued plaintiff for the full amount of the debt; defendant having promised to pay his proportion and given his note for the balance—this suit was instituted to compel defendant to reimburse plaintiff one-half of the total amount so paid, and for which he had so bound himself, as, also, to reimburse one-half of $5,000 and interest, paid by plaintiff in satisfaction of a note for that amount issued by the lumber company to the Merchants' & Manufacturers' Bank of Ellisville, Miss., and indorsed by plaintiff and defendant; and to reimburse the sum of $1,100, with interest, paid by plaintiff in satisfaction of a note given by Arthur Corry for money loaned to him by the Commercial Bank & Trust Company, of Laurel, Miss.; the payment of which was guaranteed by plaintiff and defendant, but the whole amount of which defendant agreed to reimburse and for which he now admits liability to plaintiff.

There was judgment in the district court, in the more important respects, in favor of plaintiff, defendant has appealed, plaintiff has answered, praying for amendment of judgment.

The details of the transactions upon which the suit is based, as disclosed by the evidence and admissions, are as follows: The instrument of guaranty in favor of the First National Bank was executed by the three guarantors in May, 1913, in the office of the bank in Laurel, in agreement with the cashier, and, as we infer, was left in the possession of the bank, though not signed by it. On June 26, 1914, the bank loaned the lumber company $1,000 on its note for that amount, payable in 90 days, with interest at 8 per cent., which note contained a promise to pay all expenses that might be incurred in its collection, "including reasonable attorney's fees."

On July 22, 1914, the bank loaned the company $6,500 on a similar note. In the meanwhile, on June 18, 1914, the Merchants' & Manufacturers' Bank of Ellisville had loaned the company $5,000 on its note for that amount, payable in 90 days, with like interest, and indorsed by plaintiff and defendant. On August 12, 1914, the Commercial Bank & Trust Company of Laurel made the loan of $1,100 to Arthur Corry, on his note for that amount, payable in four months, with interest at 8 per cent. the payment being guaranteed in writing by plaintiff and defendant.

On October 20, 1914, the lumber company went into voluntary bankruptcy, and shortly thereafter the First National Bank brought suit against plaintiff for the recovery of the amounts represented by the two notes, of $1,000 and $6,500, held by it (omitting to make defendant and Arthur Corry parties thereto,

because defendant was a nonresident of Mississippi and Arthur Corry was insolvent); and action was subsequently taken by the different parties in interest, as follows: On January 4, 1915, the trustee declared a dividend of $574.30, payable on the debts aggregating $7,500, due to the First National Bank, and on January 14, the whole of that dividend was attributed to the payment, in part, of the note of $1,000, and interest ($20.67) accrued up to September 28, 1914, leaving due a balance of $446.37, plus $24, of interest accrued from September 28, 1914, to January 14, 1915, which was increased, by February 6, 1915, to the extent of $2.40 interest, showing the balance due on that day to be $472.77, of which plaintiff then paid $236.39, as covering the one-half, leaving a balance due of $236.39, which, by January 6, 1916, was increased by the interest charge ($14.76) to $251.14.

On February 6, 1915, plaintiff paid $3,250, being one-half of the face of the note for $6,500, and $143.72, being one-half of $287.44, the interest due on that day, making a total payment of $3,393.72. On April 9, 1915, the trustee declared dividend No. 2, of $574.30 on the debts due the National Bank and one-half of that amount ($287.15) was attributed to the principal of the note for $6,500, reducing the balance due to $2,962.85, and the other half was credited to plaintiff. On November 10, 1915, the trustee declared dividend No. 3 of $382.87, and one-half of the amount ($191.44) was similarly attributed, reducing the balance, of principal, to $2,771.-41, to which was added $364.66 of interest, so that on January 5, 1916, the balance of the principal and interest due on the $6,500 note was $3,135.71; the other half of the dividend having been credited to plaintiff.

On January 5, 1916, the balance of $251.14 due on the note for $1,000 was added to the balance of $3,135.97, due on the note for $6,500, making $3,387.11, for which plaintiff gave his note of that date, and on February 4, 1916, he paid $87.11 on account, thus reducing the face of the note to $3,300. On May 6, 1916, he made a further payment of $1,000 on account, and, as we understand, paid the interest ($90.78) accrued up to that date, leaving due a balance of $2,300 principal and interest. On May 8, 1916, dividend No. 4, of $298.72, was declared by the trustee, and credited to plaintiff. On April 12, 1916, service was accepted and citation waived on the petition herein; on May 19, 1916, the petition was filed in court; and on June 6, 1916, plaintiff made a payment of $322.47 on account of principal, and of $42.81 on account of interest. On November 6, 1916, he made a further payment, on the principal of the debt of $700, and $30 on account of the interest. On February 5, 1917, the balance of principal and interest amounted to $816.18, and he paid it in full.

Upon the note of $5,000 held by the Merchants' & Manufacturers' Bank plaintiff gave his secured note on January 16, 1915, upon which, on February 19, 1917, he made a cash payment of $2,448.11, and, on March 6, 1915, he paid, in full, the balance of principal and interest amounting to $2,833.25. The dividends declared by the trustee on that debt were: January 5, 1915, $386.24; April 6, 1915, $386.24; November 3, 1915, $257.49; May 8, 1915, $200.

Concerning the note of $1,100, counsel for defendant say, in their brief:

"It represents a credit extended to defendant's son. The defendant verbally agreed with Fox that he would reimburse Fox, not only the virile portion of defendant, as coguarantor, but would reimburse Fox the entire amount of this note. The defendant therefore instructed us to admit, in the answer, liability to the plaintiff for the total amount paid by the plaintiff on this note; and therefore this note passes out of consideration in considering the merits of this case. We make this admission without prejudice to our exception to the jurisdiction of the state court, and exceptions of no cause and no right of action, urged by defendant."

It is alleged and proved, without attempt at contradiction, that, after the lumber company had gone into bankruptcy, defendant not only promised plaintiff to pay the $1,000 note in full but to pay one-half of the amount for which he and plaintiff were liable on the other notes.

## Opinion.

[1] I. Before otherwise pleading, defendant filed a petition, alleging diverse citizenship, and praying for the removal of the cause to the District Court of the United States for the Western District of Louisiana, and it was so ordered; but, on plaintiff's motion, in that tribunal, the case was remanded to the state court, in which defendant filed a plea, alleging that the order of removal had been properly made, and that the jurisdiction had been thereby divested, which plea was properly overruled; the question presented having been decided adversely to defendant's contentions and the doctrine recognized by the federal courts being that, where a nonresident plaintiff brings suit in a state of which the defendant is a resident, such defendant cannot remove the same to a federal court, on the sole ground of diverse citizenship. Martin v. Snyder, 148 U. S. 663, 13 Sup. Ct. 706, 37 L. Ed. 602; Thurber v. Miller, 67 Fed. 371, 14 C. C. A. 432; Schofield v. Demorest (C. C.) 40 Fed. 273; Telegraph Co. v. Brown (C. C.) 32 Fed. 337.

II. Defendant then filed an exception of no right and no cause of action, which, as we infer from the argument in this court (though the pleading, itself, contains no specification), was based upon the failure of the petition to allege that the debts in question had been paid in cash and in full, at the time that this suit for reimbursement was instituted; and the failure to allege that payment had been made in consequence of a suit instituted against plaintiff, as provided by article 3058 of the Civil Code.

The exception having been overruled, defendant answered, filed an amended answer, the case was set for trial, and the evidence adduced, after which defendant again excepted, alleging that plaintiff, "in his proof and upon the trial hereof," shows no right of action, for the following reasons, namely (we state them in substance): That his transactions with the banks, instead of being actual payments, "as alleged," with subrogation to the rights of the banks, were partial payments of his proportion of the debts due to the banks, followed, after the institution of this suit, by the giving of his notes for the balances, with the result that the original debts were paid in part and novated, and defendant released as to the balances, but, even if that were not the case, that plaintiff has no right of action with respect to any of said obligations, without proof of actual payment of the same, in its entirety, prior to the institution of this suit; and that the giving of his notes therefor was not such payment, they being merely promises to pay.

[2-4] Subject to certain exceptions, which do not arise in this case the interpretation and effect of a contract, in every other state, must be the same as where it is made and to be executed. Clague v. Creditors, 2 La. 115, 20 Am. Dec. 300; Spears v. Shropshire, 11 La. Ann. 559, 66 Am. Dec. 206; Bacon v. Dahlgreen, 7 La. Ann. 601; Hawley v. Sloo, 12 La. Ann. 815; Oliver v. Lake, 3 La. Ann. 78; Bent v. Lauve, 3 La. Ann. 88. Inasmuch, therefore, as the contracts here sued on were made and to be executed in Mississippi, this controversy, concerning the rights and obligations arising therefrom, should be determined in accordance with the law of that state, as brought to our knowledge, or, in default of such knowledge, upon the assumption that it is the same as the law of this state. Harris v. Alexander, 9 Rob. 151; Clampitt v. Newport, 8 La. Ann. 124; Syme v. Stewart, 17 La. Ann. 73; Hebert v. Winn, 24 La. Ann.

387. According to the testimony, taken under commission, of a member of the bar of Mississippi, the systems of common law and equity are established in that state, and the petition in this case discloses a case cognizable in the courts of equity; there being no statute, to the knowledge of the witness, governing the issues so presented, and, according to the ruling of the Supreme Court of the state (in Stone v. Buckner, 12 Smedes & M. [Miss.] 73):

"Where a surety has paid the debt of a principal, he cannot make a cosurety liable to him without proof that he has actually paid the debt, and had made an ineffectual effort to obtain payment from the principal, or that he is insolvent; nor where there are more than two sureties, and one has paid the whole debt, can he compel one of the others to repay him onehalf, without proof of the insolvency of the other suretics."

The witness cites various publications, as of recognized authority in the courts of Mississippi and elsewhere to the effect that:

"In equity, if some of the sureties are insolvent, or out of the jurisdiction, the amount for which the cosureties are liable, in contribution, is apportioned among the solvent sureties, within the jurisdiction. 32 Cyc. 286."

And the counsel for defendant quotes authority for the propositions:

"While contribution is based upon equitable doctrine and was first enforced in courts of equity, it is now generally recognized in courts of law,. and, when practicable, enforced there, on the theory of quasi contract, or an implied contract between sureties to contribute each his proportionate share of what one alone is required to pay. * * * 20 Cyc. 496, note 10, verbo 'Guaranty.'

"The action at law for contribution is generally brought, not on the original debt, but on the contract which the law implies, in the absence of express agreement, and it is enforced in an action of assumpsit under the common counts for money paid. 32 Cyc. 925, verbo 'Principal and Surety.' See, also, 9 L. R. A. 411; 1 A. L. R. 1355."

[5, 6] These authorities are cited by plaintiff's counsel on the question of the removal of the cause, but, though they are not controlling upon that question, they serve to support the conclusions that we reach: That, as to plaintiff's claim for reimbursement of money expended in paying defendants' proportion of the debts represented by the notes issued to the First National Bank of Laurel, he is not entitled to recover in this suit, for the reason that the debts had not been wholly paid when the suit was brought, and its bringing was therefore premature, but that, as to his demand for contribution on account of his payment of the notes issued to the Merchants' & Manufacturers' Bank, that note having been wholly paid prior to the institution of this suit, the suit was well brought. We also conclude that it was well brought with respect to the contention, set up in the exception, filed after the hearing of the evidence in the case, to the effect that plaintiff's transactions with the different banks, instead of being, as alleged in the petition, actual payments, with subrogation, were shown to have been payments in cash of plaintiff's virile share of the solidary obligations in question, and a novation of said obligations by the substitution of plaintiff's individual notes therefor, and their surrender by the banks and consequent extinction, without the accession of defendant, thereby operating defendant's release. We have just held that, according to the law by which the question is to be determined, it is a condition precedent to the enjoyment by a surety of the right to demand contributions from a cosurety that he shall first have wholly paid the debt for which they were bound, and we have no warrant for construing the same law to mean that the payment required to secure the right to contribution destroys that right by discharging the debtor from whom the contribution is due. Under our law (Civ. Code, art. 2190):

"Novation * * * is not presumed; the intention to make it must clearly result from

the terms of the agreement, or by a full discharge of the original debt."

The furnishing of a new note is not a novation, and does not release the pledge securing the original note. Union Nat. Bank v. Slocomb, 34 A. 927. Where the note of a dissolved partnership was surrendered and the note of a succeeding partner taken, he having assumed the liabilities of the old concern, it was held no novation or release of the retiring partner. Lisso v. Navra & Offner, 34 La. Ann. 1111. The delegation by which a debtor gives to the creditor another debtor, who obliges himself towards such creditor, does not operate a novation, unless the creditor has expressly declared his intention to discharge his debtor who made the delegation. Choppin v. Gebbold, 13 La. Ann. 238. To constitute the contract of novation on the essential point of the extinguishment of the pre-existing obligation, there must appear the consent of both contracting parties. Studebaker Bros. Mfg. Co. v. Endom, 51 La. Ann. 1266, 26 South. 90, 72 Am. St. Rep. 489. In the instant case, it is quite evident that nothing could have been further from the intention of the plaintiff than the discharge of the defendant.

The amount expended by plaintiff in paying the note of $5,000 (principal and interest) appears to have been $5,281.36, but, in fixing the proportion for which defendant is liable, there should be credited upon the whole debt, as it stood on January 5, 1915, the dividend of $386.24, declared on that day by the trustee of the bankrupt debtor, with interest at 8 per cent. until March 6, 1915, when the balance due upon the original debt, bearing interest at that rate, was finally paid; and, the amount of the original debt, with interest, and as thus credited, as of the date of the final payment, being thus ascertained, defendant should be held liable for one-half of it, less half of the dividends subsequently declared by the trustee, the amount due by him and the dividends, alike, to bear interest at 5 per cent. from March 6, 1915, until he pays said amount and interest. According to our calculation, the original debt, with interest, amounted, on January 5, 1915, to $5,220. Deducting therefrom the dividend of $386.24, declared on that day, left $4,883.76, which, with interest at 8 per cent., was increased by March 6, 1915, to $4,899.75. Hence defendant is liable for one-half of that amount, or say $2,449.87, with interest at 5 per cent., until paid, less one-half the dividends subsequently declared by the trustee, bearing like interest from their respective dates. Those dividends were declared as follows: April 6, 1915, $386.24; November 3, 1915, $287.49; May 8, 1916, $200; and the amounts to be so credited, as of these dates respectively, are therefore $193.-12, $128.74, and $100. No agreement having been shown as to the interest to be paid by defendant in the contingency that has arisen, and no evidence having been introduced as to the interest allowed by the law of Mississippi, it is presumed to be the same as under our law, to wit, 5 per cent. per annum from the time the debt falls due, unless otherwise stipulated, C. C. art. 1938; C. P. art. 554; Bent v. Laure, 3 La. Ann. 88; Hawley v. Sloo, 12 La. Ann. 815; Red Cross v. Lumber Co., 139 La. 1082, 71 South. 191; Watson v. Feibel, 139 La. 407, 71 South. 585.

The judge a quo seems to have found that the note for $1,100 was paid on January 4, 1915, and, with accrued interest, amounted to $1,134.95, for which he gave judgment with legal interest. We find no complaint as to the amount or date of payment. He also gave judgment for contribution to the payment of the notes issued to the First National and Merchants' & Manufacturers' Banks, respectively. We think there was error in allowing the claim of the First National Bank, and in the calculation of the interest on the claim of the Merchants'

& Manufacturers' Bank. The decree will therefore be set aside and recast.

For the reasons thus assigned, it is ordered and decreed that the judgment appealed from be set aside, and that there now be judgment in favor of plaintiff and against defendant in the sum of $2,449.87, with legal interest thereon from March 6, 1915, until paid, subject to credits for the following amounts and from the following dates, to wit: $193.12, with legal interest from April 6, 1915; $128.74, with like interest from November 3, 1915; and $100, with like interest from May 8, 1916; and that there be further judgment in favor of plaintiff and against said defendant in the sum of $1,134.95, with legal interest thereon from January 4, 1915, until paid.

It is further ordered and decreed that in other respects plaintiff's demands be denied, and this suit dismissed as in case of nonsuit. It is further ordered that the costs of both courts be paid by defendant and plaintiff in the proportions of two-thirds by defendant and one-third by plaintiff.

### On Rehearing.

PROVOSTY, J. The Laurel Lumber Company, of Laurel, Miss., of which plaintiff and defendant's son were the principal stockholders, needing a line of credit, plaintiff and defendant and the First National Bank of that town entered into a written agreement by which the bank was to furnish money to said company up to $12,500, and plaintiff and defendant were to be sureties for the reimbursement of same and of whatever expenses might have to be incurred in connection with same.

The company executed two notes in favor of the bank, for $1,000 and $6,500, respectively, in pursuance of that agreement; and, these notes maturing after the company had gone into bankruptcy, plaintiff took them up, paying one-half cash and giving his individual note for the other half. The bank transferred them to him without recourse.

He did the same thing with another past-due note of the company for $5,000, in favor of the Merchants' & Manufacturers' Bank of Ellisville, Miss., on which plaintiff and defendant figured as indorsers, but were in reality sureties, as the indorsement had been contemporaneous with the execution of the note, and the parties had at the same time waived presentation for payment, protest, and notice of protest.

There is another note in the case, but as to it no defense is made.

The petition alleges that plaintiff "took up and paid" the notes, which would imply that he paid the full amount in cash, whereas in point of fact one-half was paid by means of plaintiff's individual note.

Plaintiff sues as transferee of the bank, thereby exercising the right of action which the bank had, and also as subrogee by operation of law, thereby exercising the equitable right of action conferred by article 3058 of the Civil Code upon the surety who has paid the suretyship debt against his cosurety for the latter's half of the debt. That article reads:

"Art. 3058. When several persons have been sureties for the same debtor and for the same debt, the surety who has satisfied the debt, has his remedy against the other sureties in proportion to the share of each; but this remedy takes place only, when such person has paid in consequence of a law suit instituted against him."

The petition does not allege that the payment made by plaintiff was "in consequence of a lawsuit instituted against him," and does not allege that the law of the state of Mississippi applicable to the case is different from the law of Louisiana, nor what the law of that state is, and because of the absence of these allegations the defendant filed an exception of no cause of action; and the argument is that, in the absence of any allegation of what the law of Mississippi is, the presump-

tion must be that it is the same as that of Louisiana, and that a surety who has paid the suretyship debt has no recourse against his cosurety in Louisiana unless the payment has been made in consequence of a lawsuit having been instituted.

We need not go into that question, since, if so be that plaintiff has not properly set forth in his petition the equitable right of action conferred by said article 3058, he certainly has in a very full manner set forth a right of action as transferee of the bank. This he has done by alleging all the facts, and praying judgment for the amount shown by them to be due by defendant. The notes are annexed to the petition, and they show the indorsement, the waiver of presentation for payment and of protest and notice of protest, and the transfer by the bank to plaintiff without recourse.

A question much discussed among the civilians is whether in case one of several sureties has paid the debt and has been contractually subrogated to all the rights of the creditor he may sue any one of the cosureties for the entire debt save his own proportional part of it. Vo. Cautionnement Fuzier-Herman, No. 650; Dalloz, Rep. de Legis. No. 291. Laurent is of the opinion that he may. Du Cautionnement, No. 267. His reasoning is that, there being no contractual relation between the sureties, the conventional subrogation must be allowed its full effect. And Huc is of the same opinion. Com. on Art. 2033, C. N., Du. Cautionnement, No. 235. But Pothier was of a different opinion (Obligations, No. 445), and so are Troplong, Du Cautionnement, No. 432, and other authors. The reason is that each of these other sureties, when thus sued for the whole and required to pay, would be legally subrogated to the rights of the creditor, and thus in his turn might sue the surety to whom payment has been made, with the result that there would be circuity of actions. But plain-

tiff in this case is not suing for the entire debt, but only for defendant's just half of it; and, there being no contractual relation between them, and no equity standing in the way (since defendant does not pretend not to owe the debt), there can be no reason why the petition should be held not to show a cause of action.

"In becoming sureties for the same debtor the sureties have contracted no obligation as between themselves." Fuzier-Herman, Vo. Cautionnement, No. 641. "They have not contracted any engagement between themselves." Pothier, Obligations, No. 445.

The case is now before this court only on the $5,000 note, it having been otherwise finally disposed of by judgment of this court from which a rehearing was granted only as to this $5,000 note.

On the merits, as to this $5,000 note, defendant contends that the balance due on the note was extinguished by novation when plaintiff executed his individual note for it, and that this had the effect of releasing the cosurety entirely. In that connection defendant cites article 2198 of the Code, which reads:

"Art. 2198. By the novation made between the creditor and one of the debtors in solido, the codebtors are discharged.

"The novation that takes place with regard to the principal debtor, discharges the sureties.

"Nevertheless, if the creditor has required, in the first case, the accession of the codebtors, or in the second, that of the sureties, the former credit consists, if the codebtors or the sureties refuse to accede to the new arrangement."

This article means nothing more than that an obligation which is extinguished by novation is extinguished as to all parties connected with it, just and precisely as happens when an obligation is extinguished by payment or in any other way. Very plainly the giving of plaintiff's note to the bank in consideration of the bank's transferring the suretyship note to plaintiff did not have the effect of extinguishing the debt as to

defendant. That the transaction should have that effect would be strange indeed. Marcadé in his Com. on Art. 1279 of the C. N., very appositely observes:

"If the debt were guaranteed by sureties these would be liberated at the same time as the principal debtor, no matter by whom the novation was effected, even though it were by one of the sureties, provided, however, that the novation bore on the debt itself and not exclusively on the suretyship; for if the intention was to novate only the accessory obligation, it is very clear that the principal obligation would continue to exist, and hence it would be necessary to consider if the intention was to extinguish the obligation of all the sureties or only that of the surety who made the novation."

This matter is so plain, and besides was gone into so extensively in the original opinion, that we do not think there can be any need of saying more about it here.

In Fuselier v. Babineau, 14 La. Ann. 764, the court seems to have taken the view that any convention made between one of the sureties in solido and the creditor inures to the benefit of the cosureties; but the court gave no reason for this, and, so far as we can see, would have been at a loss to give any if called upon to do so. Since neither contract nor equity stands in the way of such a convention, why should it not be perfectly valid? That there exists no contractual relations between such cosureties is a point that has been fully settled since the days of the Romans. One such cosurety is therefore not the agent of his cosurety when dealing with the creditor; and so long as nothing is done to make the position of the cosurety any worse, no question of equity can arise.

A creditor may release one of the debtors in solido and retain his claim against the other debtors in solido for the proportional parts of these other debtors. Civ. Code, art. 2100 et seq. Why, then, may not a creditor deal with a surety in solido for the latter's part of the debt and retain his full right against the cosureties for their parts? Suppose the creditor made a donation of his claim to one of the sureties, would the debt of the cosureties be thereby extinguished, except for the proportional part of the donee? No one, we imagine, would say so. And if one of the sureties may thus acquire the claim against his cosureties by donation, why may he not acquire it by purchase, or in any other legitimate mode of acquisition? When he acquires the whole debt, his part of it becomes extinguished by confusion, but the part of his cosureties continues in full force. Of course, if instead of acquiring the debt he simply extinguished it by payment or novation, the sureties would be released; and the only recourse against the cosureties would be the equitable remedy provided for by article 3058. But if he neither pays nor novates the debt, but simply purchases it, why may it not be as valid in his hands as in the hands of the party who sold it to him, as to that part which as between himself and his cosureties he does not owe.

The decree heretofore handed down herein is reinstated in full, and made the final judgment of the court.

O'NIELL, J., concurs in the result.