164 So. 794

**LEIGH v. WRIGHT et al.**

No. 33311.

Dec. 2, 1935.

J. D. Barksdale, of Shreveport, and George Wesley Smith and J. C. Theus, both of Monroe, for appellant.

Sholars & Gunby, McHenry, Lamkin & Lamkin, and Charles Titche, all of Monroe, for appellees.

ODOM, Justice.

Plaintiff, trustee for the bankrupt estate of Dr. C. H. Moseley, has appealed from a judgment dismissing his suit on exception of no cause of action.

The facts disclosed by the petition are that the Riverside Sanitarium, Inc., a Louisiana corporation organized on August 1, 1925, purchased on that date from the Monroe Building & Loan Association certain real estate for which it agreed to pay $50,000, evidenced by one principal note for that amount to be paid in monthly installments of $583.35. The building and loan association retained the usual vendor's lien and special mortgage on the property sold as security for the debt and required additional security for $50,000, which was furnished by fifteen physicians and two dental surgeons who entered into a suretyship contract by which they bound and obligated themselves in solido with the sanitarium to pay said indebtedness, in case the principal obligor failed to discharge its obligation. To evidence the suretyship contract, these physicians and dentists signed a written instrument in the form of a bond which was delivered to the building and loan association concurrently with the delivery of the note. The written instrument is attached to and made part of the petition, and stipulates:

"That the Riverside Sanitarium, Inc., * * * as principal and the undersigned signers hereof as surety * * * are held and firmly bound in solido unto the Monroe Building & Loan Association * * * in the full sum of Fifty Thousand ($50,000.00) Dollars for the payment whereof well and truly to be made we bind ourselves, our heirs, administrators and assigns and each of us in solido, firmly by these presents. Dated and signed at Monroe, Louisiana, August first, 1925.

"The condition of the above obligation is such that whereas the said Riverside Sanitarium, Inc., * * * has borrowed from the Monroe Building & Loan Association the sum of Fifty Thousand ($50,000.00) Dollars with eight per cent. per annum interest thereon from August first, 1925. * * * Now therefore if said Riverside Sanitarium, Inc., of Monroe, Louisiana, shall well and truly pay said loan * * * with all interest, costs, attorneys' fees, taxes, insurance premiums and penalties that may be incurred in connection with said loan and the monthly installments due on said loan as they become due, all in accordance with the rules, regulations and by-laws of said Building & Loan Association and the vendor's lien and mortgage securing said loan, then this obligation shall be null and void; otherwise it shall remain in full force and effect against principal and surety."

This instrument is signed by the Riverside Sanitarium, fifteen physicians, and two dentists; Dr. C. H. Moseley being one of the physicians who signed. The petition sets out that the sanitarium was unable to meet its monthly payments of $583.35 as they fell due, and that Dr. Moseley, "being bound with the others in solido for the

whole amount of the debt, on demand of the Monroe Building & Loan Association and with the full knowledge, concurrence and consent of the other obligors," paid said installments from the month of November, 1928, to the month of January, 1931, both inclusive. Certified copies of Dr. Moseley's checks showing these payments are attached to the petition.

Subsequently both the sanitarium and Dr. Moseley were adjudged bankrupts. The present suit was brought by the trustee in bankruptcy of Dr. Moseley's estate, against fourteen of the other sixteen persons who signed the suretyship contract with him, to recover judgment in solido against them for the amount which he had paid, less one-seventeenth thereof, which he admits that Dr. Moseley was obligated to pay. One of the parties was dead and another was absent at the time the suit was brought. The trustee reserved his right to sue the heirs of the deceased and the absentee if he could be found.

Plaintiff did not allege that Dr. Moseley paid these amounts "in consequence, of a lawsuit instituted against him." C.C. art. 3058.

The defendants excepted to the petition on the ground that it set out no cause or right of action, which exception was sustained and plaintiff's suit dismissed.

Counsel for plaintiff argued at the bar and contend in briefs filed that, when Dr. Moseley paid the monthly installments due by the sanitarium to the Monroe Building & Loan Association as they fell due, he became legally subrogated to all of the rights of the creditor, citing article 2161 of the Civil Code, par. 3, which provides that "subrogation takes place of right: * * * 3. For the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it."

It is asserted by plaintiff, and not denied by defendants, that Dr. Moseley was bound in solido with his cosureties for the payment of the whole debt of the sanitarium, including the monthly installments, and that he had an interest in making the payments. Therefore, if it be true as a matter of law that Dr. Moseley, by making these payments as he did, became legally subrogated to all the rights of the building and loan association and stepped into its shoes, as it were, his trustee in bankruptcy is entitled to judgment in solido against his cosureties for sixteen-seventeenths of the amount which he paid, because unquestionably the building and loan association would have been entitled to that kind of a judgment against Dr. Moseley and the others had the payments not been made. So the question is whether Dr. Moseley became subrogated to the rights of the creditor on making these payments.

We do not think so. Dr. Moseley and these defendants became bound in solido with the debtor and among themselves for the payment of the entire debt, including the monthly installments, by virtue of a suretyship contract which they signed with the debtor and which was delivered to the creditor concurrently with the delivery of the note evidencing the debt. We must therefore look to the codal provisions un-

der the general heading "Of Suretyship" and none other to ascertain what recourse one of the sureties who paid the debt has against his cosureties. That law is written in plain and unambiguous language. Article 3058 of the Civil Code, which is found under title 16, which has to do solely with the general subject "Of Suretyship," reads as follows:

*"Recourse of Sureties Against Co-Sureties.* When several persons have been sureties for the same debtor and for the same debt, the surety who has satisfied the debt, has his remedy against the other sureties in proportion to the share of each; but this remedy takes place only, when such person has paid in consequence of a lawsuit instituted against him."

█ We need look no further for plaintiff's remedy against Dr. Moseley's cosureties. He may call on each to contribute his share or portion of the debt paid, but he cannot recover judgment in solido against them. This is not a case where a cosurety paid a claim and had it transferred to him by the creditor who was paid, and therefore the ruling in such cases as Fox v. Corry, 149 La. 445, 89 So. 410, does not apply.

█ But counsel for defendant say that the exception of no cause or right of action is good because plaintiff did not allege that Dr. Moseley made these payments in consequence of a lawsuit instituted against him, and in support of their contention they cite the last clause of article 3058 of the Civil Code, which says that "this remedy takes place only, when such person has paid in consequence of a lawsuit instituted against him."

This defense would be good if it were not affirmatively shown by the petition that Dr. Moseley made the payments "on demand of said Monroe Building & Loan Association and with the full *knowledge, concurrence and consent* of the other obligors." (Italics ours.) This being true, and we must assume that it is because it is so alleged, these defendants have no standing to invoke the rule laid down by the last paragraph of the above-quoted article of the Code. According to the petition, Dr. Moseley paid the monthly installments due on the loan for twenty-seven consecutive months, to the knowledge and with the consent and concurrence of his cosureties. The reason underlying the rule laid down by the Code is that no one of the cosureties should be permitted to pay voluntarily a debt for which they are all bound and thereby cut the others off from such defenses as they might have or might wish to urge. The rule is just and equitable, but does not apply where the cosureties have knowledge of, and concur in, the payments. If these defendants had any objections to urge against the payments, had thought their rights were being jeopardized, had any defense, it was their duty to speak in time to prevent the payments. They knew what their cosurety was doing, and according to the petition concurred. They are equitably estopped from urging the defense that the payments were not made in consequence of a lawsuit brought against the one who paid. The following quotation from Words and

Phrases, First Series, vol. 3, p. 2498, is supported by numerous authorities, and is applicable here:

"Equitable estoppel is the effect of the voluntary conduct of a party, whereby he is absolutely precluded, both at law and in equity, from asserting rights which might have perhaps otherwise existed, either of property, of contract, or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his condition for the worse, and who, on his part, acquires some corresponding right, either of property, of contract, or of remedy."

Counsel for defendants cite several cases in which this court applied the rule which they invoke; the latest being Palmer v. Oscar Dowling Food Products Co., Inc., 174 La. 923, 142 So. 127, which followed Stockmeyer v. Oertling, 35 La.Ann. 467.

These cases applied literally the textual provisions of article 3058 of the Code. In Stockmeyer v. Oertling the court said, with reference to the prerequisites to a recovery by the cosurety who paid the debt, against his cosureties:

"The three necessary conditions are that the surety who is demanding contribution, and the surety from whom it is demanded, must each have been surety for the same debtor, and for the same debt, and satisfaction of the debt must have been enforced against the surety demanding contribution by a lawsuit."

But there is nothing in either of these cases to show or even to indicate that the payment by one of the cosureties was made with the knowledge, concurrence, and consent of the others. These cases therefore have no application to the case at bar.

Another contention made by the defendants is that the sanitarium, the principal debtor, was not in default when Dr. Moseley made the payments sued upon, and therefore the obligation of the sureties, as contracted and set forth in the suretyship bond, never arose. This contention seems to be based upon a special provision in the deed and mortgage to the effect that, if the vendee and mortgagor should fail for four consecutive months to make the payments therein called for, "such failure shall at once and without demand or putting in default and as a penalty, make said promissory note, with all back installments thereon, become immediately due and exigible, and shall entitle said association to enforce summarily the collection of said note and of each installment due thereon."

Dr. Moseley did not wait until four payments were due, but made the monthly payments as they fell due, and it is argued that, because he made these payments as they fell due, the obligation of the sureties never arose.

We are not impressed with this argument. The plaintiff's suit is not on the mortgage contract, but on the suretyship contract. The obligation of the cosureties which the trustee is seeking to enforce arose under the suretyship contract, which specifically bound the sureties to pay the monthly installments on said loan as they became due. The installments fell due

each month, and the sureties were bound to pay them when due. Their obligation to pay arose upon the maturity of each installment, and therefore it cannot be said that Dr. Moseley paid prematurely.

 Another contention is that one of the sureties who pays only a part of the debt is not entitled to contribution from his cosureties. It is pointed out by counsel in brief that the principal debt was $50,-000; that Moseley paid only about $15,000 of that amount, leaving a balance of $35,000. Counsel say in their brief: "In other words, if the defendants, co-sureties, pay $15,000.00, that must be paid to the creditor and not to Moseley, a surety."

If that were true as a general principle, a cosurety who pays part of a debt would lose entirely the part he paid for the others and would still be bound in solido with them to the creditor for the balance where solidarity between the sureties is expressed. He would be deprived of the remedy afforded him by article 3058 of the Civil Code. It makes no difference whether a cosurety pays part or all of the debt, for, whether he pays part of it or all of it, he is entitled to contribution from each of the cosureties for his pro rata share of the amount paid. The purpose of this suit is to enforce such contribution.

Plaintiff, in bringing suit to recover judgment in solido against the cosureties of Dr. Moseley, has mistaken his remedy. He is not entitled to judgment in solido against them. His remedy is to demand contribution as provided in article 3058 of the Code. But we do not think his suit

should be dismissed on that account. He has made such allegations as warrant a recovery from each of the defendants his share or proportion of the debt paid by Moseley, if he can prove them, and his suit should stand for that purpose.

For the reasons assigned, the judgment appealed from is reversed, and it is ordered that the case be remanded to the lower court and reinstated on the docket thereof to be proceeded with according to the views herein expressed. Costs of this appeal are to be paid by the appellee; all other costs to follow the final decree.